Judge Marshall

delivered the Opinion of the Court in this case, at the last Spring Term; but the decision was afterwards suspended, and the Opinion having been since re-considered and somewhat modified, is now made final, as follows:—
This action of covenant was brought to recover for a partial loss, upon a policy of insurance, executed by the Louisville Marine and Fire Insurance Company.
The policy purports to insure Messrs. Bland and Coleman, in the sum of one thousand eight hundred and sixty five dollars and forty-nine cents, upon sundries (stated in the margin) lost or not lost, shipped or to be shipped, from New Orleans to Louisville, on board of one or more steam boats, with the privilege of transhipping the whole or any part on other small steam boat or boats, and on one or more keel boats, to be towed or not towed. The insurance to attach immediately upon the shipment of the articles at New Orleans, and to continue until they should be safely landed at Louisville; covering the perils of the river and other enumerated hazards usually incident to the voyage.
It was stipulated that, in case of loss or misfortune, it should be the right and duty of the assured to sue, travel, labor, &c. for the defence, safeguard and recovery of the goods, to the charges for which, the Company should contribute.
And it was agreed that certain specific articles were warranted by the assured, free from all and every kind of average, unless general; that other specified articles were warranted free from average under fifteen per cent. unless general; that others, also specified, were free from average, under ten per cent. unless general, and that certain other *144 enumerated articles and all other goods were warranted free from average under seven and a half per cent. unless general.
The declaration.
Facts agreed or admitted.
It was further agreed that, in case of loss, the assured should abate two per cent. on the amount insured, and the loss should be paid in sixty days after proof of loss and interest. Other stipulations contained in the policy, need not be adverted to.
The declaration avers, in substance, that 100 sets of counter weights, 10 bundles sheet iron, 15 bundles wire, and 40 lbs. tinned rivets, of the cost of $500 50—part of the goods insured, were separately shipped, at New Orleans, on the steam boat Jefferson, and at the mouth of the Tennessee river, reshipped on the keel boat Pennsylvania, towed by the steam boat Conveyance, for Louisville; that, “ on their passage from the mouth of the Tennessee “to Louisville, said goods were much wet and “damaged, to the amount of $260, and the charges “$7 50, and the general average of the goods on board “the keel boat Pennsylvania, was $8 70—making the “plaintiffs’ claim for loss and charges, &c. $276 78; “and the plaintiffs aver, the defendants were notified of “the loss and damages sustained, on the—day of—“1833, and proof made to their satisfaction, of the loss “and plaintiffs’ interest in the goods.”
By agreement of the counsel on both sides, it was admitted that the value of the whole sum ensured and shipped under the policy, was one thousand eight hundred and sixty-five dollars and forty-nine cents, of which Bland and Coleman were the sole proprietors: that 100 sets of counter weights, 10 bundles sheet iron, 15 bundles wire, and 40 lbs. tinned rivets, and some block tin, of the goods ensured, of the cost and value of $500 50, were shipped at New Orleans, separately, on the steam boat Jefferson, and, at the mouth of the Tennessee, re-shipped on the keel boat Pennsylvania, towed by the steam boat Conveyance, for Louisville; that about seven miles above the town of Rome, on the Ohio, the said keel boat struck a sunken rock, and was wrecked, and the cargo wet and damaged; that the goods, covered by this policy, were then transhipped on board a flat boat, which *145 was towed by the steam boat Conveyance, to Portland; and that, on their arrival at Portland, the goods were damaged $260 28—that the cost and charges occasioned by the damage, were $7 50, and the general average incurred and paid by Bland and Coleman, on said goods occasioned by the damage to the said keel boat, was $8 70: making the plaintiff's claim for damage, charges and average, $276 78. It was also admitted, that the defendants had been notified of the claim of the plaintiffs, as above stated, and furnished with the preliminary proof, and payment required and refused, on the 11th of September, 1833.
Judgment of the court below.
A declaration on a policy of insurance, for a partial loss by damage to the goods, should state—& the proof must show—the cause of the damage, specifically, or, at least so far as to show that it arose from one of the perils insured against. And where, by a ‘memorandum’ attached to the policy (as there generally is) certain articles are warranted free of any average, or free of any under a certain rate per cent., unless general, the declaration must show that the goods, and amount of loss, are such, that the insurers are not exempt from liability by the warranty.
A protest made before a Notary Public, by the captain and crew and two passengers of the steam boat Conveyance, and an additional statement of the Notary, were admitted as a part of the agreed facts; from which it appears that, the keel boat Pennsylvania was wrecked on the 6th of September, 1833, and that the damage to the goods was occasioned by that disaster.
It was submitted to the Circuit Court, upon the declaration, policy and agreed facts, to determine whether the plaintiffs were entitled to recover; and if they so entitled, the Court was to assess the damages, and give judgment for the amount; otherwise to give judgement for the defendants. Upon this submission, a judgement was rendered against the Insurance Company, for three hundred and thirty four dollars and fifty cents, for the reversal of which this appeal is prosecuted.
Objections are now taken, and, as we think, good grounds, to the sufficiency both of the declaration and the agreed facts to sustain the judgment rendered. The declaration does not state the particular cause of the damage for which it seeks indemnity; nor does it even state in general terms, that the loss arose from one of the perils insured against. It is also defective, in not showing that the loss arising from the damage to the goods, even if it were occasioned by one of the perils ensured against, is one for which, under the several agreements of warranty, the insurers are liable to make payment.
A defective declaration may be cured by an agreed case; but a judgt. not warranted by the declaration, nor by the facts agreed, nor both, cannot be sustained.
Further details of facts in the case: the terms of the contract of insurance; defects of proof &c.
But, from the manner in which the case was submitted, as above stated, we should not be inclined to reverse the judgment on these grounds, if the agreed facts had supplied the defects in the declaration, and had made out a case on which the judgment, as rendered, could be supported. This has been done so far as to show that the loss or damage on the goods, was occasioned by one of the perils ensured against, and also, so far as to show that the plaintiffs were entitled to recover the two small sums claimed as charges and general average. There is scarcely a doubt upon the agreed facts, that, according to our construction of the policy, the insured are entitled to recover something, also, for the damage or loss sustained by the goods: but the agreement of facts does not make even this absolutely certain; and while it does not furnish the means of ascertaining the precise amount of damage for which the insurers are liable, it proves conclusively, that they are not liable for the whole loss sustained, and for which, with the interest thereon, judgment was rendered against them.
If it were not for the agreement that certain articles should be free from average, unless general, and that other articles should be free from average under a certain rate per cent. unless general, the insurers would be liable, under the general terms of the policy, to indemnify the insured for all damages or losses occasioned by the perils insured against. This agreement, usually called the memorandum, excepts the articles therein referred to from the general terms of the policy, and limits the insurer’s liability as to them, by the conditions expressed in the memorandum. In claiming a recovery for a loss upon the enumerated or specified articles, it is obviously essential to show, that the loss is within the risk or liability as thus limited. And it is to be regretted that, in framing the policy, (which is evidently a general form, and not an instrument devised for this particular transaction,) the insurers have not expressed this important limitation upon their liability, in language indicating more distinctly the precise restrictions to which the applicant for insurance is required to agree.
Explanation of the term "average" as used in policies of insurance.
Where articles insured, are waranted free of average, unless general, the insurers are not liable (except for contribution under a general average,) unless there is a total loss. But query, whether they are not liable for an entire loss of a part of the articles included in the ‘memorandum’ of warranty, as one class.
The articles actually ensured by the present policy, as stated in the margin, as copied in the record before us, are of eight different species, as follows, viz: 100 boxes of tin plate, 100 sets counter weights, 40 lbs. tinned rivets, 20 block, do., 10 bundles Russia sheet iron, 15 bundles wire, 5 pigs India tin, and 922 lbs. English brass kettles; the aggregate value of all which, was $1,865.
The third and fourth of the above articles, as stated in the declaration, were 40 lbs. tinned rivets, 20 block, do. By the first clause in the memorandum, the assured agree to warrant some thirty denominations or species of articles, including tin plate, sheet iron, tin ware, iron wire, cutlery, &c. free from all average, unless general; by the second clause, they warrant about an equal number of articles, including hard ware, brass wire, block tin, copper and, brass wares, castings of all kinds &c. &c. free from average under 15 per cent. unless general; by the third clause, they warrant another long list, beginning With bar iron, steel, dry goods, drugs and medicines &c. free from average, under ten per cent, unless general; and the last clause warrants all other articles free from average under seven and a.half per cent, unless general.
The word ‘average,’ as used in policies of insurance, seems to have a technical meaning, which will be sufficiently indicated, for our present purpose, by saying that it signifies, in substance, a partial, loss accruing to or on account of the insured goods, by reason of some of the perils insured against. ’General average,’ or general partial loss, arises from a general contribution, to which the goods of all may be subjected for the remuneration of a sacrifice incurred for the safety of all. ‘Average’ alone, or ‘particular average’ or particular partial loss, denotes a loss less than total, arising from a partial injury to the insured goods, or some of them, from some of the enumerated perils.
From this explanation it follows, that the insurers are liable in all cases of total loss, and in all cases of general average or contribution; but that, as to the articles or species of articles enumerated in the first clause of the *148 memorandum, they are exempt from liability for all partial losses, except those arising on a general average or contribution.
The judgt. including sums for partial losses, on articles warranted free of average, and on some not included by the terms of the policy—is erroneous, and must, therefore, be reversed.
A policy of insurance, contains a clause, by which it is agreed, 'in effect, that such and such articles are warranted, free of average, unless general, such and such others free of average under certain rates—as 15, 10, 7 1-2pr. ct.—unless general: held that, where payment is claimed, upon this policy, for an injury, from one of the perils insured against, to goods within one of the warranties,—in order to ascertain whether the loss is so great as to make the underwriters liable, not withstanding the warranty, the amount of damage is to be compared—not with the total value of all the goods insured; nor with the value of the various articles to which the same warranty, or rate of average, applies, taken together; but with the value of that one of the several articles, specified in the warranty, to which the damage has occurred.
*148 As no one article of the cargo was totally lost, there can be no liability under the first clause, unless for general average, and there need be no distinct enquiry in this case, whether the loss of so much of the cargo as consists of articles coming within this clause is requisite, or whether the loss of the whole of any one species or denomination of such articles, might not suffice, to render the assurers liable for what should be thus lost.
It is to be remarked, however, that, of the goods insured in this instance, the 100 boxes of tin plate and the 15 bundles of Russia sheet iron are certainly within the first clause, which exempts the assurers from all liability for partial injury or damage sustained by them. Whence it follows that, as the partial damage sustained by the sheet iron, is included in the amount of damages adjudged to the assured, the judgment is certainly for too much. The same remark applies to the 10 bundles of wire, if it was iron wire. And if there is no mistake in the statement made in the agreed facts, the whole damage estimated, and for which judgment was given, included the amount of injury done to some block tin, when, as we understand the statement in the margin of the policy, there was in fact no block tin covered by this insurance, and the declaration does not aver that any such article was either insured or damaged. Upon these grounds, the judgment must necessarily be reversed: and any defect or mistake may be put right hereafter.
The other insured goods, which sustained partial damage, are 100 sets counter weights, 40 tinned (or turned) rivets, 20 block (or black) do. These articles are not specifically named in any part of the memorandum, but they may, and probably do, come under some of the general denominations enumerated in the second clause, as hardware, castings, copper and brass wares, &c. &c. But whether they do or not, is a matter of fact about which there is neither averment nor proof, and which we cannot, therefore, decide. Nor is it material that we should, as we cannot now dispose finally of the case. If *149 they do not come within the second clause, they, or such of them as do not, are not included in any of the enumerated articles, and of course, come under the last clause, which fixes the lowest rate of average, or partial loss, for which the ensurers are to be liable. So, if the wire which was damaged, be not iron, but brass wire, it would come under the second clause, but if of any other metal it is not enumerated, and would fall within the lowest rate of average. All these facts may be ascertained on another trial. But for the purpose of stating the principles which we think applicable to the case, it may be assumed, that all these articles come within the second clause of the memorandum, which exempts the insurers from liability for any partial loss, under 15 per cent.
Unless the loss come within the liability, the assured, of course, cannot recover. But to ascertain whether this is the case, and to show that it is, the extent of the loss itself must be made known, and to authorize recovery as to articles within the second clause, the loss on those articles must amount to 15 per cent. The loss here refer ed to, is the injury or damage to the particular goods themselves, and cannot be increased so as to amount to the required rate per cent. by adding to it, either the injury sustained by other articles, or any other claim, as to which the liability of the assurers stands upon a different basis. This principle excludes the damage to the sheet iron, as to which there is no liability for partial injury; and also, the sum paid as general average, and the charges paid for saving the goods, or preventing further loss; the two last of which, though recoverable under the policy, are entirely distinct from the loss upon a particular portion of the goods. The precise partial loss on the articles, now assumed to come within the second clause, is not shown in this record, and cannot be judicially known to us. But assuming it to be ascertained, as it doubtless can be, the next enquiry, in determining the right of recovery, is whether the loss amounts to the required rate per cent. And here the question occurs—upon what is the per cent. of loss to be calculated? With what sum or value is the loss to be compared, in order *150 to ascertain whether it amounts to 15 per cent.? Is it to be 15 per cent, upon the entire sum ensured, as the total value of all the goods? Is it upon the value of all insured articles which are enumerated in the same clause of the memorandum, and as to which the liability of the insurers stands on the same basis? Or, is it upon the value of the whole of that particular article or species on which the partial injury has fallen? It is contended by the assurers, that the loss must be compared with the entire sum ensured, as the value of all the goods covered by the policy, and that it must amount to 15 per cent. upon that total value, before they can be made liable under the second clause of the memorandum. If this be the proper construction of the policy, it would often happen that there could be no recovery, though every article in the clause should be totally destroyed, unless there was also a total loss, actual or technical, of every other article covered by the policy. Suppose a cargo, consisting of different articles, to be ensured at the aggregate value of $10,000; that of these articles a certain number by name, and which in fact amount in value to $8,600, are warranted free of average, unless general, and that all the rest are warranted free of average under 15 per cent. unless general. As the entire value of this last portion of the goods would not exceed $1400, a total destruction of that portion would not amount to 15 per cent. on the whole value ensured; and as this ratio of loss could not be made up by any addition for losses incurred on the other portion, it is clear that, upon the principle contended for, the assured, would be entitled to recover nothing, unless under circumstances which would authorize a recovery of the entire value of the whole cargo ensured, as for a total loss of the whole cargo. For the same principle which requires a comparison of the actual loss with the value of the whole cargo, for the purpose of ascertaining whether it amounts to 15 or any other per cent. would also require a comparison with the same value, in order to ascertain whether the loss were partial or total. Thus, while the terms of the contract would manifestly import a more effectual indemnity for the articles coming within the second clause, than for those within the first, *151 the insured would, under this construction, find himself no better, and perhaps not so well, secured in regard to the former, as if there had been no discrimination. In cases in which the articles coming under one of the clauses in the memorandum, form a greater proportion of the whole cargo, the result will not be precisely the same as in the case above supposed; yet the fact that the construction contended for, must, in numerous cases, produce that result, when either of the alternative constructions would give a remedy, and that, in all cases, it extends greatly more than either of the others, the exemption from liability which the assurers have provided for themselves, furnishes some argument against it, which should lead to its rejection, if all other ground of determination were equal.
The rule that, an instrument sho’d be understood in the sense most against the maker, is peculiarly applicable to a long and complicated instrument drawn, or adopted, by the makers, for their general use, and not for the particular case, and especially so, where the terms are obscure and perplexing.
For if, in any case, it be proper to resort to the rule which declares that an instrument should be construed, most strongly against the maker of it, there would seem to be good reason for applying it to a long and complicated instrument, adopted upon due deliberation, by the makers, not for a single case, but for all cases, and which, after promising by its general terms, the fullest indemnity that an adventurer could desire, contains, among its numerous stipulations, what purports to be an agreement on his part, intended to limit their risk and restrict their liability, but expressed in terms so quaint and uncouth, and apparently misapplied, as to be wholly unintelligible to the uninitiated; and which, when its terms and general object are fully understood, leaves it still doubtful in what manner, and to what extent their liability was intended to be restricted.
But we are of opinion that, without resorting to this rule, there are other considerations sufficiently decisive against the construction, that the loss is to be compared with the value of the whole cargo, to ascertain its rate per cent.
1. The sentence containing the agreement of warranty, enumerates the various articles to which alone the warranty applies, exempting them from average under 15 per cent. There is no reference to the whole cargo, or to any other portion of it, but the exemption applies to these art- *152 ticles alone, and we do not perceive how the '15 per cent,’ which is the very measure of the exemption, can be separated from these articles to which alone the exemption applies, and carried back to the whole cargo. According to the natural construction of the sentence, as it would be understood in ordinary discourse, written or verbal, we think the words '15 per cent,’ without any additional expressions, must be understood as refering to the enumerated articles, collectively or distributively, and not to the whole cargo, of which all other portions, except the enumerated articles, are excluded from the operation and import of this sentence, by the enumeration itself.
2. It being well established that the loss or damage upon any other portion of the cargo, cannot be brought in, to increase the loss upon the articles classed together, as free from average under the same rate per cent—it would seem to be unreasonable and unjust that the value of any other portion should be brought in, to increase the sum with which the loss is to be compared, and thus comparatively to diminish the loss.
3. By the permanent form of their policy, the present assurers have divided all articles which may become the subjects of marine insurance, into four classes, as to each of which, they have restricted, in different degree, their liability as insurers. The articles of the first class being warranted free from all particular average, the second from particular average under fifteen per cent. &c. And a similar division of the cargo, and restriction of liability, though differing in extent, is found in the policies of other insurers. This feature seems to have been originally introduced for the purpose of excluding all enquiry and litigation as to the liability of insurers for partial injuries, or for injuries under a given rate, sustained by a few special articles, which were considered as being, from their own nature, peculiarly liable to deterioration in quantity, quality or value. And although the memorandum, as now presented, is more extensive and complicated than formerly, and makes a more minute classification of the articles which may compose a cargo, and a corresponding gradation of liability for partial losses up *153 on the different classes, still there seems to be no just foundation for the discrimination made between the different articles, unless upon the ground, real or assumed, that, from their own peculiar nature, or from some other cause to which they are or may be subjected in the voyage, but against which the insurers do not mean to undertake, some of them are more liable to partial injury than others. In this view of the subject, it is the obvious intention of the memorandum to classify the various articles of the cargo, according to their different degrees of liability to deterioration or partial injury from the excepted cause, and to exempt the insurers from liability for losses arising from such cause. And for this purpose, and to avoid the necessity of attempting to ascertain what portion of a loss may have arisen from the excepted and permanent cause, and what portion from a peril ensured against, and which has actually happened, it has fixed a standard or rate of loss applicable to injuries accruing to the articles of each class, respectively, which may be supposed to cover the entire degree or rate of injury to which the articles of that class are liable from the excepted cause, and has, in effect, provided that, if the loss upon the articles of the particular class, equal the standard or rate fixed for that class, and has been, in any degree, produced by one of the perils insured against, it shall be considered as if it arose wholly from such peril; and therefore, shall be the subject of compensation; but if it fall below the standard, it shall be attributed wholly to the excepted cause, though in fact occasioned to some extent by one of the perils insured against.
If there be any truth, as we suppose there is, in this explanation and account of the nature and object of the memorandum, it follows that the rate of loss provided for, determining the insurer’s liability, or exemption from liability, for partial injuries to a certain class of enumerated articles, must have been fixed solely with reference to the degree or rate in which the same articles are supposed to be liable to deterioration from the excepted cause. And, as this rate or degree was fixed on by comparing the amount of loss to which the articles, separately or in classes, are supposed to be subject from this cause, with *154 their value or quantity in a perfect state, exclusive of any other value or quantity—it would seem to follow naturally and necessarily, that, in ascertaining whether the rate or degreee of the actual loss amounts to the rate or degree thus fixed, the value of the actual loss must be compared with the value, either of all the articles which are classed together, under the same rate of liability to deterioration, or with the value of the particular articles themselves which have sustained the injury. The insurer may well say that, because six of the articles composing a certain cargo, or because some of the articles which may compose every cargo, are liable to deterioration to the extent of ten or twelve per cent, from causes against which he will not insure, therefore he must be exempt from liability for any losses on them, which do not amount to fifteen per cent of their value; but there would be no reason in his saying that, because these particular articles are liable to such deterioration, therefore, he will not be liable for a loss upon them, unless it amount to fifteen per cent upon the value of the entire cargo, consisting perhaps of a thousand articles not at all subject, or in various degrees subject, to deterioration and which have nothing to do with the rate or degree in which the enumerated articles are liable to deterioration. This would be introducing in the conclusion, a subject entirely new, and having no natural relation to the premises. And although the parties might make such a contract, it is not therefore to be inferred that they have done so; and we certainly are not disposed to adopt a forced construction, in order to arrive at so unreasonable a conclusion.
4. It is said, however, that the prescribed rate of loss, should be understood as referring to the value of the whole cargo, because the policy states no other value, and therefore gives no other basis of calculating the per cent. We do not, however, admit the force of this argument. The policy identifies the various articles composing the cargo, and thus furnishes the means of ascertaining the value of the articles, separately or in classes. And although the total value being actually inserted in the policy, is in fact, there, ready to be taken as the sum with which to compare the partial loss, if the contract should be understood as in *155 dicating this mode of ascertaining the rate of loss incurred, it by no means follows, and we see no reason for conceding, that it was inserted for this particular purpose. And, as in case of partial loss, the insured value of the article, or species of articles damaged, must, in all cases, be ascertained, in order to ascertain the amount of loss to be brought into the calculation, there is not any convenience even, in taking the entire value of the whole, rather than that of the article, or species which is injured, as the sum with which to compare the loss.
It is true that, where the different species of goods composing the cargo, have been separately valued in the policy, and there has been no further discrimination between them, this discrimination alone has been deemed sufficient to authorize the construction, that the terms of the insurance should be applied separately to each species, as if there were a separate contract as to each. And it has been determined that, in such a case, if one species be so damaged as to have authorized its abandonment, if it had been the only article insured, it may be abandoned to the insurer, and a recovery had as for a total loss of that species, though there be other goods insured in the same policy which are not abandoned. (Diedrich vs Commercial Insurance Company, 10 John. 234.) But, if the mere statement of the separate value of each species of the goods insured, in describing the cargo, be sufficient to authorize the separate application of the terms of the policy to each species, as if there had been a distinct insurance of each; the distribution of the whole cargo into separate classes, in the present policy, and the discrimination expressly made between the different classes, present much stronger ground for considering each class as in effect covered by a separate policy. For in the case before us, it is not left to implication whether the contract applies to the entire cargo as a unit. The cargo is expressly cut up into different portions, not for the purpose of description or identification, but obviously, for the purpose of discrimination, and of making the contract operate differently upon each portion.
We are satisfied, therefore, that the value of the entire cargo does not furnish the sum with which the value of *156 the loss or damage is to be compared, in order to ascertain whether it amounts to the rate required to render the insurers liable, under either clause of the memorandum.
But the question still remains, whether the rate of loss is to be ascertained by comparison with the value of all the articles embraced within the same clause, or with the entire value of that species which has sustained the loss. Some of the reasoning which has been already used, tends to establish the conclusion, that the comparison should be made with the value of the species, and not of the class. And, although the American authorities are not explicit on the subject, and the authoritative adjudications of the English Courts have little application to a policy making such a complicated arrangement of the whole cargo, as is made in the present instance, we are inclined to adopt that as the proper conclusion.
It was decided in England, in the case of Davy vs Milford, 15 East's Rep. 559, in a case where the cargo insured consisted of flax only, which was warranted free from average, unless general, that the total destruction of a distinct parcel of the flax, was a total loss of such part, within the policy, and rendered the underwriter liable as for a total loss, pro tanto. The doctrine of this case has not been followed in the American decisions. In the case of Brays vs The Chesapeake Insurance Company, 7 Cranch, 415, the Supreme Court of the United States decided, that the entire loss of a portion of a cargo consisting entirely of hides, warranted free from average, unless general, was only a partial loss, under the policy, and did not render the insurers liable. And in the case of Wadsworth vs the Pacific Insurance Company, 4 Wendell’s Rep. 33, the same principle was decided, upon a similar policy. In the case last cited, however, the doctrine is plainly implied, though not expressly declared that the total destruction or loss of any one species of the articles enumerated in the memorandum, as free from average, unless general, will render the insurer liable, though the other articles coming under the same warranty, be not lost nor even injured. And the principle extracted from the case by the reporter, is that "An underwriter is not answerable for a partial loss on mem *157 orandum articles, except for general average, unless there is a total loss of the whole of the particular species:" which plainly implies that, if there be such total loss of one species of the memorandum articles, the underwriter will be answerable. The same principle is to be implied, though not so directly, from the case of Brays vs The Chesapeake Insurance Company, above cited.
Where an insurance upon goods stipulates that the shipper may transfer them from one vessel to another, or into different vessels, as the exigencies of the voyage may require, and some of the articles insured are warranted free of average (unless general) the contract would seem to attach to all the articles, and to each class, not withstanding a re-shipment precisely as though they had remained in the vessel in which they were first shipped. Sed quere. The premium for an insurance is considered as part of the value insured; and in case of an open policy is to be added to cost and charges of the goods, to ascertain their value. And where a policy stipulates that, in case of loss, the insured shall abate so much percent., it is to be calcuted upon the amount of the loss—not on the value of the cargo, or of all the goods covered by the policy.
*157 But if, in an insurance of several species of goods warranted free from average, unless general, this warranty is to be considered as applying separately to each species embraced within it, so as that the total loss of any one species or denomination will render the insurers liable—it follows that, upon the same principle, the warranty that certain articles or species of goods shall be free from average under fifteen or any other given rate per cent. should be applied separately to each of the enumerated articles or species, so as to render the insurer liable for a loss to any one of them, amounting to the given rate upon the value of that article or species. And this we understand to be the mode of adjustment referred to, as being appropriate to such cases, in Bonecke’s Treatise on Marine Insurance, page 477.
Being of opinion, as at present advised, that this is the proper mode of ascertaining the rate of loss, and determining the liability of the insurers in the present case, we need only say, in relation to the separate shipment of a part of the cargo, as allowed by the policy, the effect of which, has been much insisted on in argument, that the contract, as it seems to us, attaches to all the articles and classes of articles, in the same manner as if they had been shipped in one bottom. The policy itself makes a certain distribution of the cargo, and seems to fix the liability of the insurers with reference to that distribution; and, as we are inclined to think, not with reference to any accidental distribution, which the insured or their agents might find it convenient to make. But it is not necessary to decide this point in the present case, and it is not intended to be definitively decided.
It seems requisite further to say, with regard to value, and the stipulated abatement of two per cent, on the amount insured, in case of loss, that the premium for in *158 surance seems to be considered as a constituent part of the value insured, unless the contrary appears; and consequently, that in ascertaining the value of the whole cargo, under an open policy, the whole premium is to be added to the prime cost and other charges at the port of shipment, and that in estimating the value of a portion of a cargo of which the entire value only is stated in the policy, a proportionate part of the premium &c. should be included.
The agreement that, in case of loss, there shall be an abatement of two per cent. on the amount insured, does not entitle the insurers to a deduction of two per cent. of the whole value of the cargo from every loss for which they might be liable, but only to a deduction of two per cent. from the amount of the loss which they would otherwise be liable to pay. And the amount to be paid by the insurers for a partial loss falling within their liability, is a sum bearing the same proportion to the value of the deteriorated articles, ascertained as above, that the actual damage to the articles bears to the value or price of the same articles, at the time and place of delivery, if they had been uninjured.
Having thus stated our views upon all the points which seem likely to arise in the future conduct of the case, it is considered that, for the insufficiency of the declaration and of the agreed facts, to authorize the judgment as rendered, the same is reversed, and the cause remanded to the Circuit Court, where the plaintiffs may amend their declaration, if they choose, and where further proceedings may be had, in conformity with the principles of this opinion.