FOSTER PIERCE & others *vs.* COLUMBIAN INSURANCE COMPANY.[*]

If a vessel has been condemned for unseaworthiness during a voyage, and goods on board which are insured against total loss only are thereupon, in the exercise of due fidelity and discretion, transshipped into two other vessels, one of which is wrecked and totally lost with all its cargo before reaching the port of destination, and the other arrives there in safety, the insurers are liable on the policy for the goods lost.

GRAY, J. This is an action on a policy of insurance against the usual perils " at and from New York or Boston to San Francisco on merchandise free of particular average ; no shipment to be considered as insured until approved by the company and indorsed on the policy." Each indorsement states the vessel, the voyage, the amount insured, the rate and amount of premium, and adds an abbreviation of the words "wares and merchandise, free of particular average ; " and one of the indorsements is an insurance of $8800 by the ship C. S. Pennell from New York to San Francisco.

The facts agreed are as follows : The goods thus insured by the C. S. Pennell consisted of furniture, packed in fifty-seven cases, which is not by the terms of this policy a memorandum article. The ship on her voyage from New York to San Francisco was wrecked and condemned at Rio Janeiro, and the furniture was there transshipped into two vessels ; forty-four cases into the ship Sir John Franklin, which was wrecked on her voyage thence to San Francisco, and those cases totally lost ; and

---

[*] This case was argued in November 1866.

the remaining thirteen cases into the bark Knight, which arrived at San Francisco in safety, and there landed her cargo. The articles thus saved were complete and whole of themselves, but were parts of sets lost in the Sir John Franklin. There was no abandonment, or offer to abandon ; but the defendants, after the arrival of the goods saved, had notice of the loss of the others. The amount for which judgment shall be rendered, if the defendants are liable, is agreed by the parties.

The plaintiffs seek to recover upon two grounds ; 1st, that the goods lost were originally distinct from those saved; 2d, that after the transshipment they were distinct subjects of insurance.

The rules which must govern the first of these claims are well settled by authority. " Particular average," as used in this policy, means partial loss, and " free of particular average " is equivalent to " against total loss only." If goods of one kind in one ship are insured by one description and valuation against total loss only, the total loss of some of them, though in separate packages, is considered but a partial loss of one entire subject of insurance, and gives no right to recover against the insurers as for a total loss of that part. In all the cases in which part of a cargo has been treated as a distinct subject of insurance, the goods lost have been either of a different kind from those saved, or so valued or described, by packages or otherwise, as to distinguish them. *Ralli* v. *Janson,* 6 El. & Bl. 422. *Wilkinson* v. *Hyde,* 3 C. B. (N. S.) 30. *Kettell* v. *Alliance Ins. Co.* 10 Gray, 154, 155. *Silloway* v. *Neptune Ins. Co.* 12 Gray, 73. *Humphreys* v. *Union Ins. Co.* 3 Mason, 429. 3 Kent Com. (6th ed.) 329, 330. And under a policy of insurance upon goods to be indorsed, such a separate valuation, when necessary to make a distinct subject of insurance, must be made with the assent of the insurers, in accordance with the general rule of the law of insurance which requires the mutual assent of the parties to the essential terms of the contract. *Entwisle* v. *Ellis,* 2 Hurlst. & Norm. 549. *Newlin* v. *Ins. Co. of North America,* 20 Penn. State R. 312. *Orient Ins Co.* v. *Wright,* 23 How. 401. *Hartshorn* v *Shoe & Leather Dealers' Ins. Co.* 15 Gray, 240.

The goods in question in this case were all of one kind, in-sured by one valuation, and no act of the assured alone could separate them into distinct risks. If they had continued in one vessel, they would have constituted one subject matter of insur-ance. It is true that insurance "against total loss only" covers a constructive total loss. *Heebner* v. *Eagle Ins. Co.* 10 Gray, 131. *Kettell* v. *Alliance Ins. Co.* Ib. 144. *Adams* v. *Mackenzie*, 13 C. B. (N. S.) 442. And by the American law, if goods other than memorandum articles are injured by perils of the sea to more than half their value, it is a constructive total loss, and authorizes an immediate abandonment and recovery against the insurers. 10 Gray, 136, 154. 3 Kent Com. 329. But after any part, though less than half in value, of goods insured as one sub-ject, has arrived in safety at the port of destination, the owner cannot abandon to the insurers and recover for a total loss. *Forbes* v. *Manufacturers' Ins. Co.* 1 Gray, 371.

It becomes necessary therefore to consider the second ground of the plaintiffs' claim, which presents an interesting and hitherto undecided question of the law of insurance, depending however upon the application of familiar principles.

A policy upon goods in a particular ship covers them in an-other ship, if transshipped by necessity, or under a stipulation in the policy allowing transshipment. *Macy* v. *Mutual Marine Ins. Co.* 12 Gray, 497. *Plantamour* v. *Staples*, 3 Doug. 1. *Oliver-son* v. *Brightman*, 8 Q. B. 781. It is admitted that if the names of the two ships into which these goods were transshipped had been originally inserted in this policy, or indorsed thereon by the assured with the authority of the insurers, the cargo of each would have been a distinct subject of insurance. If power to transship had been expressly given in the policy, the result would have been the same. The assured indeed could not by any act of theirs, without the assent of the insurers, separate one subject of insurance into two. But if the separation is made with the assent of both assured and insurers or their authorized agents, it has the same effect as if the two subjects had always been dis-tinct. Upon the wreck of a vessel and breaking up of a voyage and the bringing of the cargo into a port of necessity, the right,

according to the law of England, and, according to our law, the duty also, of acting as agent for the best interests of all parties, the underwriters, as well as the owners of ship and goods, is cast upon the master; and whatever under such circumstances he does fairly and in the exercise of a sound discretion, binds all the parties in interest. Marsh. Ins. (5th ed. by Shee) 129, 130 469, 498. 3 Kent Com. 212, 213. *Bryant* v. *Commonwealth Ins. Co.* 6 Pick. 131. *Jordan* v. *Warren Ins. Co.* 1 Story R. 353. *Hugg* v. *Augusta Ins. & Banking Co.* 7 How. 609. *Kidston* v. *Empire Ins. Co.* Law Rep. 2 C. P. 357. It does not appear and is not to be presumed that the master in this case did not act with due fidelity and discretion in transshipping the goods at Rio Janeiro into two ships instead of one. The transshipment must therefore be taken to have been authorized by both in surers and assured.

After such transshipment the cargoes of the two ships became subject to the different perils of separate voyages, to distinct liens for freight, to independent contributions in case of jettison. The object of limiting an insurance to total loss is to exclude a claim for a mere partial loss of that subject which is liable to the perils that cause the injury; not to exempt the insurers from liability when those perils destroy the whole subject which is within their operation, because another subject, insured in the same policy indeed, but undergoing different risks, has not also been destroyed. An insurance upon two ships, or the cargoes of two ships, as an indivisible subject matter, would be a novelty. There is no more reason for inferring an intention in the parties to treat these goods as one subject of insurance after they had been necessarily separated into two bottoms, than if they had been originally described in the policy as partly in one ship and partly in another. In *Entwisle* v. *Ellis*, 2 Hurlst & Norm. 555, Baron Bramwell said, " If an insurer " (using the word, as contrasted with " underwriter," to designate the assured) " has a right to send goods in several ships, and does so, there are inevitably several risks and several insurances."

The unreasonableness of requiring a total loss of the cargoes of both vessels in order to warrant a recovery under this policy

may be tested by an illustration. Suppose immediately after the transshipment of the goods insured into two vessels equally and the sailing of both for their destination, the cargo of one vessel meets with a constructive total loss by being damaged by perils of the sea to more than half its value, and months afterwards, just before arrival at the port of destination, the cargo of the other vessel is also totally lost. The abandonment necessary to convert a constructive total loss into an actual total loss must be made promptly after receiving information, and, by our law, is good or bad when made, and, if valid, immediately vests the rights of the parties. 3 Kent Com. 320, 324. Upon the construction urged by these defendants, the right of abandonment of the first cargo, in the case supposed, would depend, not upon the condition of that cargo, but upon the condition of the other, there would be no constructive total loss within the policy, and therefore no right of abandonment, upon the loss of the first cargo; and after the loss of the second cargo an abandonment of the remnant of the first would be too late to be of any benefit to the underwriters, and all right of abandonment might meanwhile have been defeated by the arrival of that remnant at the port of destination.

It was argued for the defendants that the transshipment into two vessels no more made distinct insurances on the cargo of each than a putting of the goods into several lighters to be carried on shore after the arrival of the ship at the port of destination; and that in such case the goods of each lighter would not be a separate subject of insurance; for which *Biays* v. *Chesapeake Ins. Co.* 7 Cranch, 415, and *Wadsworth* v. *Pacific Ins. Co.* 4 Wend. 33, were cited. But the use of lighters, at a port where it is customary, and therefore justifiable, is only one of the ordinary incidents of the voyage for the purpose of landing the goods after the principal voyage has been accomplished. 1 Phil. Ins. §§ 970, 997. *Lane* v. *Nixon*, Law Rep. 1 C. P. 412. And it may be observed that in each of the cases cited for the defendants, only part of the goods in any one lighter was totally and finally lost; and the hides insured " free from average, unless general," were memorandum articles, as to which many author-

ities countenance a peculiar rule. The remark cited from the opinion of the court of appeals of Kentucky in *Louisville Ins. Co.* v *Bland,* 9 Dana, 157, was but *obiter dictum,* and not confidently expressed.

By the French ordinance of Louis XIV, insurances might be made on the ship and cargo conjointly or separately. Upon which Emerigon says, "The insurance is made conjointly, when I cause myself to be insured a single sum on ship and cargo. In this case, the ship and cargo form but one mass. *Non sunt duæ obligationes per se, sed una mixta.* But if, during the voyage, the ship has been condemned for unseaworthiness, and the goods have been transshipped into another vessel, it is necessary to divide the insurances conjointly made." And he elsewhere expressly says that if one of two vessels into which the cargo of a ship declared unseaworthy has been transshipped is taken by enemies or wrecked, insurers "free of average" are responsible for the loss. Emerigon des Assurances, *c.* 10, sect. 1, § 4; *c.* 12, § 46. This last statement is precisely in point, and, in the absence of judicial decisions, is of the highest possible authority. A like opinion is expressed by Mr. Phillips. 2 Phil. Ins. § 1775.

*Judgment for the plaintiffs.*

*H. C. Hutchins,* for the plaintiffs.
*E. Bangs,* for the defendants.