# Newlin *versus* Insurance Company.

1. A policy of insurance was executed to the amount of $5200 on 104 bales of cotton, valued at $50 per bale, shipped at Savannah for Philadelphia, freight to be 75 cents per bale, with primage and average accustomed: in the policy it was stipulated that "no loss or average shall in any case be paid under five per cent. unless general."

On the voyage, during a storm, *four* bales of the cotton were washed overboard, and an action of covenant for their insured value was brought:

It was *held,* that the per-centage was to be counted on the whole value of the cotton insured, and not on each bale separately, and that there could be no recovery for a loss or damage under five per cent., unless it happened by way of general average.

2. The insurance company having denied its liability because the loss was less than five per cent. of the whole invoice; and also because by *the custom* of the port of Philadelphia such a loss was not recoverable, the jury negatived the custom; but on the other ground judgment was entered for the company: it was *held,* that these defences were not inconsistent, and that the finding against the custom did not preclude the company from having judgment on the other.

ERROR to the District Court of *Philadelphia.*

This was an action of covenant upon a policy of marine insur-

[Newlin v. Insurance Company.]

ance brought by Newlin & Allibone, to the use of Roser, v. the Insurance Company of North America. The *policy*, dated 5th April, 1850, was " on goods, valued as per endorsement on policy, in vessel or vessels;" and the endorsement in question was as follows:—

| Date of Endorsement. | Vessel. | Loading to Destination. | Am't Insured. | Rate. | Pre'm. |
|---|---|---|---|---|---|
| April 5, 1850. | Sch. Julia Eliza. | Savannah to Phila. on deck, 104 bales, val'd at $50 per bale. | $5200 | 1½ | $78 |

In the *policy* there was the following clause:—" *But no loss or average shall in any case be paid under five per cent., unless general.*"

*The bill of lading* was as follows:—

Shipped in good order and well conditioned, by Henry Roser, on board the schooner called the Julia Eliza, whereof Higbee is master, now lying in the port of Savannah, and bound for Philadelphia, to say: 104 round bales of cotton on deck, being marked and numbered as in the margin, and are to be delivered in the like good order and condition at the port of Philadelphia (the dangers of the seas only excepted), unto order or to assigns, he or they paying freight for the said cotton at 75 cents per bale, with primage and average accustomed. In witness whereof, the master or purser of the said schooner hath affirmed to four bills of lading, all of this tenor and date, one of which being accomplished, the others to stand void.

Dated in Savannah, the 30th day of March, 1850.

On the voyage to Philadelphia, during a storm, *four* bales of cotton marked 18 were washed overboard; and for the value of them as insured, $200, the suit was brought. The defendants denied their liability, as well because the loss was less than 5 per cent. *of the whole invoice*, as because by the custom of the port of Philadelphia such a loss was not recoverable. The jury found *against* the custom set up by defendants, and in favor of the plaintiff for the amount claimed, which the Court afterwards in banc, agreeably to the reservation of the presiding judge, set aside, and entered a judgment *for the defendants*.

It was assigned for error, that the Court erred in setting aside the verdict, and in entering judgment for the defendants.

*H. M. Phillips*, for plaintiff in error.—Two questions were made: the *first* was that the defendants, having relied on the evidence of usage, should be bound by the verdict.

[Newlin *v.* Insurance Company.]

The *second* was as to the meaning of the 5 per cent. clause of the policy. It was said that by reference to the bill of lading it appeared that the 104 bales were composed of two lots or invoices, one lot comprising 79 bales, marked ⌷13⌷, the other 25 being marked ⌷18⌷; and as the lost 4 bales were of the latter lot, and exceed five per cent. of the whole amount of the ⌷18⌷ lot, the plaintiffs have a right to consider the two as separately insured, and therefore the loss is not within the proviso of the policy.

It was further contended that the separate valuation made in this case a separate insurance; and the clause of five per cent., introduced for purposes of avoiding disputes on trifling damage occasioned by deterioration (1 *Arnould on Ins.* 36; 12 *Id.* 865), was not intended to apply to articles *separately valued and insured* and *totolly* lost. That a separate valuation made a separate insurance: 5 *Mees. & Wels.* 571, Hills *v.* London Assurance Co.; 3 *Connecticut Rep.* 364, Ocean Ins. Co. *v.* Carrington; *Stevens on Average* 209–11; 15 *East* 559, Davy *v.* Milford; *Phillips, Stev. & Ben. on Average* 441.

*Gerhard,* for plaintiff in error.—It was contended that the separate valuation did not annul the 5 per cent. clause in the policy, 1. Because if a separate valuation were susceptible of the construction put upon it by the plaintiffs, by a well established usage of Philadelphia a separate valuation of the different bales or packages of an article insured by any one policy is not equivalent to a separate insurance of each bale or package.

2. Because, as a matter of legal construction, a separate valuation of the different bales or packages of the same article is not equivalent to a separate insurance of each bale or package. Reference was made to 3 *Mason* 429, Humphreys *v.* The Union Ins. Co.; 9 *Ser. & R.* 121, Waln *v.* Thompson; 3 *Wash. C. C. Rep.* 256; 4 *Wend.* 33, Wadsworth *v.* The Pacific Ins. Co.

The five per cent. clause is an exception in favor of the *insurers;* while separate valuations, and stipulations that the insurance is to have the effect of separate insurances on specified parts of the subject insured, by the phrase "as if separate interests separately insured," or the like, are exceptions *in favor of the insured* from the more general exception in favor of *the insurers.* As to the *object* of the five per cent. clause. In both English and American policies, as to certain specified articles liable to self-deterioration and destruction, the assurers are exempted from liability to a greater extent than as to the general cargo. As to the general cargo, the object is to protect the underwriters against trifling claims, a defence against which might involve them in expenses exceeding the amount of the claims themselves: 2 *Arnould* 865.

The opinion of the Court was delivered by

[Newlin v. Insurance Company.].

BLACK, C. J.—This was covenant on a policy of insurance, underwritten by the defendants, of $5200 on 104 bales of cotton at $50 per bale, from Savannah to Philadelphia.   On the voyage the vessel encountered a storm, during which four bales of the cotton were washed overboard and never recovered.   The policy contained an exception of particular average under five per cent. in the following words : " No loss or average shall in any case be paid under five per cent. unless general."   The loss in this case being less than five per cent. of all the cotton insured, the question arises, whether the five per cent. is to be calculated on the value of the whole lot or on that of a single bale.   The plaintiffs contend that this must be treated as a separate risk on each bale ; that it was a total loss of four bales, and not a partial loss of one hundred and four bales.

The defendants insisted, on the trial in the District Court, that by law, the facts of this case did not make them liable ; and moreover, that by a special custom of the merchants resident at Philadelphia and the insurance offices doing business here, the construction of policies, like the present, was against the right to recover for a loss of less than five per cent. calculated on the whole of one species of goods included in the same endorsement.   The jury refused to find that any such usage existed, and the verdict was in favor of the plaintiffs, the legal question being reserved.   The point thus reserved was afterwards considered in banc by the three judges, who, being of opinion with the defendants, gave judgment for them, *non obstante veredicto.*

It is now argued, that it was error not to give judgment on the verdict, because the defendants, having set up a custom, were bound to stand or fall by it.   But the argument is not sound.   There are cases in which a party is not permitted to make two inconsistent defences, but shall be put to his election which of them he will stand upon.   These defences are not inconsistent ; and, having been driven from one, he may fall back on the other.   A judgment contrary to the general law of the land is not to be inflicted on the defendants by way of penalty for asserting a particular custom which they failed to prove.   If, therefore, our opinion of the law shall accord with that of the Court below on the point reserved, this judgment must be affirmed.

According to the principle laid down in Davy v. Milford (15 *East* 559), the plaintiffs would have a right to recover as for a total loss of so much of the thing insured as was in fact totally lost.   Though it is not easy to reconcile Davy v. Milford with Hedburg v. Pearson (7 *Taunton*, 154), the former case seems to be still considered as having settled the law of England on the subject. In that country the underwriter, notwithstanding an exception in the policy of all liability for average unless general, is held respon-

sible whenever any portion of the property is irrecoverably lost, or
so injured as entirely to change its character.   To create this
responsibility, it is not necessary that the lost part of the property
should have been separately valued, but only that it should be
*capable* of a separate valuation.   The exception is never available
to the insurer except when the subject of the insurance arrives at
the port of destination, deteriorated in value but still existing in
specie.   Where, however, commodities are shipped in bulk and
insured in gross, a diminution of their quantity is considered a
case of simple average as well as a diminution of their value.
The English Courts thus interpret the same word (average) dif-
ferently in different circumstances, and without any reason that
can be perceived.   This has done much to complicate and confuse
the whole subject.

But the English doctrine was repudiated by the Supreme Court
of the United States in the case of Brays *v.* Ches. Ins. Co. (7
*Cranch* 415), and by Judge WASHINGTON in Moreau *v.* Union
Ins. Co. (3 *W. C. C. R.* 256).   In Humphrey *v.* Pacific Ins. Co.
(3 *Mason*) the soundness of the rule laid down by Lord ELLEN-
BOROUGH was denied by Judge STORY, for reasons which the ablest
of the English writers on insurance admits to be unanswerable (2
*Arnould* 441).   The principle embodied in these and other deci-
sions of the federal Courts has been adopted and followed in New
York (4 *Wendell* 33), and in Waln *v.* Thomson (9 *S. & R.* 115, 121),
this Court has very distinctly recognised it.   The high authority of
these cases, and the necessity of having uniformity of decision on
a subject which concerns the whole commerce of the country, will
probably cause them to be acquiesced in by every Court in the
Union.   It may, therefore, be safely laid down as the American
rule, that a total loss can never be said to occur when any portion
of the thing insured is preserved in specie.   As to memorandum
articles, or goods warranted free from particular average, the
insurer agrees to pay only for a total loss or for general average,
and therefore he can only be held when the whole thing goes to
the bottom, or a part is thrown overboard to save the rest.   Of
property so insured a partial loss, whether caused by a reduction
in quantity or in value, falls upon the owner himself.

This case differs however in all its leading features from Davy
*v.* Milford.   There the flax was warranted free from *all* average,
unless general, and from average *only*.   Here it is stipulated that
no *loss* or average shall be paid *under five per cent*.   The flax was
in bundles, the vessel was wrecked and no entire bundle was brought
to shore, but parts of many, amounting altogether to one-sixth of
the whole, were saved.   The important difference in favor of the
plaintiffs is, that the packages of flax were not separately valued
in the policy, while it is alleged in the present case that there was
a separate valuation, and therefore a separate insurance of each

[Newlin v. Insurance Company.]

bale of cotton. Although, therefore, the law as it is understood in England would, if it prevailed here, enable the plaintiffs to recover, it does not follow from its disaffirmance that they must be defeated. If it be the law that a separate valuation of each parcel, package, box, bale, or chest is equivalent to separate insurances on each one, and if it be true in point of fact, that this policy does contain a separate valuation of each bale, then the judgment in favor of the defendants was erroneous.

Magens (p. 73) gives it as his own opinion, that the per-centage ought to be calculated on each package or parcel, especially where the amount insured on each parcel is expressly declared. But he admits that there is no rule on the subject, and that the general opinion of other merchants is not in accordance with his own. Arnould (vol. 2, p. 865) declares, that the effect of a separate valuation of the parcels is to give a separate insurance on each. He seems to have taken it from a dictum of Lord ABINGER, in Hills v. London Ass. Co. (5 *Mees. & Wel.* 575) which was made under a total and palpable mistake about the law and the facts of Davy v. Milford, and which amounts, at best, to no more than this: that a *separate insurance* on each hogshead of sugar would make the underwriter liable (though it be warranted free of simple average) for the loss of any single entire hogshead. Phillips, in his work on Insurance (vol. 2, p. 507), says, that a separate valuation of *different articles* gives each article as a distinct basis on which to calculate the rate of exception, and cites the Ocean Ins. Co. v. Carrington (3 *Conn. R.* 357). Perhaps he means that, if several distinct *kinds* of property be insured, each at a distinct value, the rate of exception should be calculated on the value of the class or kind to which it belongs, and not on that of the whole invoice; as if horses and oxen be valued separately, and a loss of the oxen occurs, the five per cent. must be calculated on the value of the oxen alone, and not on that of the horses and oxen together. I say, this is probably his meaning, because his words will bear that interpretation, and because the case he refers to decided nothing more. It cannot be denied, however, that his note in Benecke (Stevens & Benecke, 441) is free from ambiguity; but he founds that too on the Ocean v. Carrington, the extent of which, as an authority, we think, has been misapprehended.

Among the writers, and in the codes, of continental Europe we find no trace of the doctrine supported, or at least recommended, by Magens. Their definitions of average seem to exclude it (2 *Valin* 159; 2 *Emerigon* 7). The only basis expressly given by them for computing the rate of exception is the amount insured by one policy (3 *Pardessus* 424); and, even where there are several parties insured by the same policy, the per cent. is counted on the aggregate of their several interests. The insured, in such a case, are said to be a kind of partnership, and, with regard

2 D 2

[Newlin *v.* Insurance Company.]

to the insurer, represent all together but one person (3 *Boulay Paty* 423.

But admitting that a separate valuation of the separate packages or parcels of the same species of goods, is the same as an insurance, in terms distinct and separate, on each parcel, can we consider this a case of separate valuation? None of the writers who assert this doctrine has told us exactly what he means by separate valuation. If these bales had each been valued distinctly by itself, and especially if the value put on some of them had been different from the others, and if no aggregate sum had been given as the amount insured upon the whole, this case might have worn another aspect altogether. But the sum of $5200 is insured on the whole lot, and, though the price per bale is mentioned, it is only done as showing the process by which the sum total was calculated.

The value of goods is ascertained, when they come to be insured, ·just as it is when they are bought in the market, and are naturally endorsed on the policy as they would be charged in a merchant's books. It happens every day (and the adjudged cases show it) that policies mention the price of wheat by the bushel, coffee by the pound, goat skins by the piece, &c. ; yet it has never been contended that these were insurances on each bushel, pound, or piece, and why should it be so considered in the case of cotton, whose value has been calculated by the bale? *The policy before* us furnishes an instance of what is, to all intents and purposes, a separate valuation of rice in casks, shipped by the same vessel, and endorsed at the same time, " 20 casks, marked H. O., valued at $22 each, total $440 ; 17 casks, M. O., valued at $21 each, total $357." This was a distinct valuation, and perhaps a separate insurance of the 20 casks from the 17, but not of every single cask from every other one. In our opinion, the endorsement of the cotton was an insurance of the sum total upon the whole bulk, as much as it would have been if no subdivision had been named.

Cases must have occurred very often, where claims like the present could have been made. The fact that this is the first one on record shows the opinion of the mercantile world to be against it. Convincing evidence to the same effect is also found in the general, if not universal practice of stipulating expressly, when average· is not intended to be counted on the whole, for average on each package, or on some number of them less than all. The policy before us furnishes an instance : " 100 casks rice, $23 each—each 20 casks, running numbers, subject to separate average." This shows that the present construction of the plaintiffs was not within the contemplation of the parties at the time the insurance was effected ; for it is altogether improbable that an agreement would have been made for separate average on each 20 casks, if it had

[Newlin v. Insurance Company.]

been supposed that, by the terms of the endorsement, there was already created a binding obligation to pay average on each individual cask.

The custom of exempting the insurer from liability for particular average, under a certain rate, one, three, five, or ten per cent., is universal. Its object is to protect them from claims for losses too trifling to cover the expenses of ascertaining them (3 *Pardessus* 423). But this purpose would be wholly defeated by the plaintiffs' construction, wherever the value of the parcels may happen to be mentioned, as it probably is in a vast majority of cases. For instance; on this policy, the underwriters might have been called on to make good a loss of $2.50, occasioned by sea damage to a bale of cotton, where the amount insured on the cotton was more than $5000; or $1.10 on a cask of rice, or four cents on a barrel of rosin, or ten cents on an empty barrel. Nor do I see how it can stop even there; nor why, if the rule be a good one for bales of cotton, it may not be applied to pounds of coffee or sugar. On the same principle, the twentieth part of the minutest division of weight or measure, which the policy mentions with a value, may be recovered, in case it is injured to that extent on the voyage by a peril insured against.

For these reasons, it is our opinion, that the per-centage in a case like this, is to be counted on the whole value of the commodity insured, and that there can be no recovery for a loss or damage under that proportion, unless it happens by way of general average. This rule is consistent with the universal practice, and according to the reason of the thing; and there being no adjudicated case against it, we have no hesitation about pronouncing it to be the law of this State.

Judgment affirmed.