[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10503
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-00430-PAM-CM


RELIABLE MARINE TOWING AND SALVAGE LLC,

                              Plaintiff - Cross Claimant-Appellant,

versus

JOHN THOMAS,
in personam,

                              Defendant - Appellee,

STATE FARM FIRE AND CASUALTY
COMPANY,
a foreign corporation,

                              Defendants - Cross Defendant – Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 21, 2019)

Before ED CARNES, Chief Judge, TJOFLAT, and JORDAN, Circuit Judges.

PER CURIAM:

John Thomas' boat partially sank in a storm off the coast of Florida. Reliable Marine Towing and Salvage, LLC, sent an employee to provide rescue services. Thomas and his boat made it to shore and he later filed a claim with his marine insurer, State Farm Fire and Casualty Company.

Thomas' insurance policy with State Farm covered up to $6,750.00 worth of damage to the boat under "Coverage A." It also covered "wreck removal." But wreck removal was included in the Coverage A policy limit. If the combined cost of the repairs to the boat and the wreck removal exceeded $6,750.00, the policy provided additional coverage for a maximum of 5% over the Coverage A limit, or $337.50. The policy provided an additional $500 payment, not included in Coverage A, for "emergency services."

Because of the extent of the damage, State Farm considered Thomas' boat a total loss and paid him the Coverage A policy limit.[1] At the time of that payment State Farm had not received any proof of Reliable Marine's services and had no reason to provide any coverage for wreck removal or emergency services.

---

[1] State Farm actually paid slightly less than $6,750.00 because Thomas kept the remains of the boat. Following the terms of the policy, State Farm subtracted the salvage value from the Coverage A payout. There is no dispute that State Farm met its Coverage A limit requirements under the policy.

2

Two weeks after State Farm sent Thomas the Coverage A payment, Reliable Marine faxed State Farm an invoice.  The invoice billed Thomas $3,109.84 for the rescue services.[2]  State Farm classified Reliable Marine's rescue services as both emergency services and wreck removal.  It determined that the policy covered $500 for emergency services.  Because it had already paid Thomas the policy limit under Coverage A, the policy also covered $337.50 based on the 5% additional coverage for wreck removal, making the total for emergency services and wreck removal $837.50.  The invoice did not include an assignment of insurance benefits from Thomas to Reliable Marine.  Because the policy required State Farm to pay Thomas directly unless another party was "legally entitled to receive payment," State Farm sent Thomas the $837.50 check.  But Thomas didn't pay Reliable Marine.  And in July 2017 Reliable Marine sued Thomas and State Farm.

In its complaint, Reliable Marine alleged that State Farm had breached the insurance policy it had with Thomas, and it claimed that it was a third party beneficiary to that policy.  It asserted a separate claim against Thomas for salvage. Thomas consented to judgment and assigned to Reliable Marine any claims he

---

[2] There is a lack of clarity in the record about what services Reliable Marine actually provided.  The parties agree that Reliable Marine "raised" Thomas' boat by pumping the water out of it so that it would float.  Thomas testified in his deposition that the engine in his boat was still working, so he navigated the boat to shore on his own after Reliable Marine raised it.

Reliable Marine asserts that it towed Thomas' boat to shore.  The invoice that it later submitted to State Farm sought payment of $3,109.84 for two hours and forty-eight minutes of towing and other "salvage services." State Farm did not contest the charges.

might have against State Farm.  Reliable Marine then filed a cross-complaint against State Farm standing in Thomas' shoes.  It alleged that State Farm had breached the insurance policy by not reimbursing Thomas for the cost of Reliable Marine's services.  The district court denied Reliable Marine's motion for summary judgment and granted summary judgment to State Farm.

Reliable Marine appeals that judgment, raising two contentions.  It first contends that because State Farm had an invoice showing that Thomas owed Reliable Marine for rescue services, the insurer should have paid the $837.50 directly to Reliable Marine.  Second, Reliable Marine contends that State Farm is liable for the full cost of the rescue services — above and beyond the policy limit — under both Florida insurance law and what it asserts is the policy's "sue and labor" clause.

We review de novo the district court's grant of summary judgment.  LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1189 (11th Cir. 2010).  Interpretation of the terms of an insurance policy is a matter of law that is also subject to de novo review.  Hegel v. First Liberty Ins. Corp., 778 F.3d 1214, 1219 (11th Cir. 2015) (applying Florida law).

I.

Reliable Marine first contends that State Farm should have paid it, not Thomas, the $837.50.  Reliable Marine asserts that the district court committed an

"error in findings and fact" by concluding that "State Farm did not know that

[Thomas] had assigned any rights to Reliable Marine." According to Reliable

Marine, because State Farm had the invoice it must have known about the rescue

services when it sent the second payment to Thomas. It is difficult to tell from

Reliable Marine's briefs exactly how that argument supports its allegation that the

insurance policy was breached or even what remedy it is seeking. Happily it does

not matter.

State Farm indisputably <u>did</u> know that Reliable Marine provided rescue

services. That's why it wrote the check. It wrote the check to Thomas because the

plain language of the policy required State Farm to pay Thomas directly unless

another party was "legally entitled to receive payment."

Reliable Marine did not provide any evidence that Thomas assigned to it

his right to the insurance payments.[3] Nor did it cite any authority indicating that an

invoice establishes "legal entitle[ment]" to receive payment, which the policy

required for a direct payment. Reliable Marine has not established the existence of

---

[3] Thomas did assign any <u>claims</u> he might have against State Farm to Reliable Marine. But that assignment was part of his consent to judgment in this lawsuit; it took place after the insurance proceeds for rescue services had already been paid to Thomas. There is no evidence that Thomas had assigned to Reliable Marine his right to receive <u>payment</u> from State Farm before it paid Thomas the rescue services payment.

In its brief to this Court, Reliable Marine points out that oral contracts are enforceable under maritime law. But because it points to no evidence that Thomas orally assigned it any insurance proceeds that he was entitled to recover under the policy, the rules of oral contracts in maritime law have no bearing on this case.

a genuine issue of material fact about whether State Farm violated the terms of the policy by sending the $837.50 directly to Thomas. Id. Indeed, the plain language of the policy establishes that State Farm was obligated to do just that.

## II.

Reliable Marine next contends that even though State Farm has already paid out the maximum coverage limit it must also pay the full cost of Reliable Marine's services, which it asserts amounts to $3,109.84.[4] Reliable Marine argues that full payment is required both under Florida law and under the terms of the insurance policy.

## A.

Reliable Marine relies on Government Employees Insurance Co. v. Macedo, 228 So. 3d 1111 (Fla. 2017), to argue that Florida insurance companies must reimburse insureds for expenses that the insurance company requires them to incur.[5] And because under his policy Thomas had to "protect the property from further loss," Reliable Marine argues that State Farm must reimburse it for the full cost of the rescue services. But that is not what Macedo holds. The insurance

---

[4] In its complaint Reliable Marine claimed that State Farm owes Reliable Marine money as a third party beneficiary to the policy. In its cross-complaint Reliable Marine claimed that State Farm owed it money because Thomas assigned it his right to sue. It does not matter which theory Reliable Marine uses because, as we will explain, State Farm had no duty to pay anything above the maximum coverage limit.

[5] If there is no "judicially established federal admiralty rule," we rely on state law to interpret a marine insurance policy. See AIG Centennial Ins. Co. v. O'Neill, 782 F.3d 1296, 1302 (11th Cir. 2015).

company in <u>Macedo</u> had to reimburse the insured's expenses because the policy was ambiguous about whether it would reimburse those expenses. <u>Id.</u> at 1113.

Under Florida law if an insurance contract is unambiguous the plain language controls. <u>Id.</u> And Thomas' State Farm policy is unambiguous. It paid the full Coverage A limit because the boat was declared a total loss. And State Farm paid another 5% over that policy limit plus $500 for the services that Reliable Marine provided. It is clear from the plain language of the policy that is all Thomas could expect from State Farm. And as a result, that's all Reliable Marine could expect.

## B.

Reliable Marine also contends that the district court erred in finding that the State Farm policy did not include a sue and labor clause. Under a sue and labor clause the insured is required "to sue, labor and travel for, in and about the defense, safeguard and recovery of" the boat. <u>Reliance Ins. Co. v. The Escapade</u>, 280 F.2d 482, 484 n.4 (5th Cir. 1960).[6] In exchange the insurance company agrees to reimburse the cost to the insured. <u>Munson v. Standard Marine Ins. Co.</u>, 156 F. 44, 47 (1st Cir.1907) (holding that if an insurer does not expressly agree to reimburse the insured for sue and labor expenses it is not a "true ancient sue and labor

---

[6] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

clause," and the insurer has no duty to reimburse those expenses).   Reliable argues that Thomas' policy contains a sue and labor clause that obligates State Farm to reimburse it for the full cost of raising Thomas' boat.

We agree with the district court that there is no sue and labor clause in the State Farm policy.  The policy has a clause that requires Thomas to "protect the property from further loss."  But the clause does not require Thomas to go to the great lengths to protect the boat than a sue and labor clause would require.  The clause in Thomas' policy does not require him to sue anyone; nor does he have to travel.  And State Farm did not promise to reimburse Thomas for expenses he incurred "protect[ing] the property from further loss."  Under Florida law insurance contracts are interpreted according to their plain language, Macedo, 228 So. 3d at 1113, and the plain language in Thomas' policy does not include a sue and labor clause.

**AFFIRMED.**