## BIAYS

v.

## THE CHESAPEAKE INSURANCE COMPANY.

1813.

Feb.    24th.

*Absent....*TODD, *J.*

ERROR to the Circuit Court for the district of Maryland, in an action of covenant upon a policy of insurance on *hides,* which by the memorandum in the policy, are declared to be free from average, unless *general.* The policy contains the usual stipulation " that " in case of loss or damage, the assured shall labor, &c. " for the preservation of the property, to the 'expenses " of which the assurers will contribute." The voyage was to *Amsterdam.* The vessel arrived at a place called " *Niew Diep* ;" where, according to the usage of the trade, the hides were put into several lighters to be sent to Amsterdam. One of these lighters sunk, but some of the hides contained in it were afterwards fished up and saved by the people of the place, for which a salvage of 6,000 dollars was allowed and paid. The rest were totally lost. This action was brought to recover for those totally lost, and for the salvage of those which were saved.

There cannot be a total loss of part of a cargo consisting of memorandum articles of only one species, (such as hides.) Nor are the underwriters liable for salvage upon such articles, under the clause which authorises the insured to labor and travel for the preservation of the cargo, unless perhaps in a case where the salvage may

BIAYS
*v.*
CHESA-
PEAKE
INS. CO.

On a case stated, the judgment of the Court below was for the Defendants; on which the Plaintiff brought his writ of error.

HARPER *for Plaintiff in error*, contended,

have prevent-
ed an actual
total loss of
the cargo.

1. That where an insurance is made in gross, as in this case, upon a cargo consisting of a number of separate distinct things there may be a total loss upon some of them, though the rest are saved, and

2d. That as consequently the loss here upon the hides fished up would have been total but for the labor and care of the assured, they are entitled to be reimbursed the expense, by the underwriters, under the stipulation in the policy on that subject; notwithstanding the declaration in the memorandum, exempting hides from particular average.

1. The obvious construction and meaning of the memorandum is, that where the cargo is divisible, there may be a total loss of part. The *average* loss mentioned is loss by deterioration. If one out of many bales of cloths should be lost, it would be a total loss of that bale.—But if one piece in a bale should be damaged and lost, it would be an average loss, especially as to memorandum articles. If a cargo should consist of 500 casks of wine, and 499 of them should be lost, one only being saved, this would be a total loss of the 499 casks.

In the absence of all authority, we must resort to general principles. Such cases must have existed often— but no case is found in the books like the present. The inference is, that it must have been considered as a total loss.

2. The 2d point, (as to the salvage) is perhaps a point of more difficulty; but it depends in part, upon the first. Where the object of the expense is to prevent a total loss, the underwriters are liable. Here the *salvage* loss prevents a *total* loss.

If a literal construction be given to the two stipulations in the policy, one would destroy the other. The

insured are to labor to prevent a total loss; not for their own benefit, for they are insured, but for the benefit of the underwriters. The loss was of part of a ligter load of hides, some were fished up and saved, and salvage paid.—No expense could arise respecting these hides, unless it would come under the name of average loss. The stipulation therefore to labor &c., would be void as to all these articles. The construction ought to be, that we will pay all expenses incurred, to prevent a greater than an average loss.

*March 6th....*LIVINGSTON, *J.* delivered the opinion of the Court as follows:

This is an insurance on hides, " warranted by the " assured free from average, unless general."—The declaration is for a total loss by perils of the seas, but it came out in evidence, that 3,280 hides (the whole number insured being 14,565,) were put on board of a lighter to be transported from the vessel to their place of destination—that the lighter in her passage to the shore was sunk, by which accident, 789 of the hides, of the value of 4,000 dollars, were totally lost, and the residue, to the number of 2,491, more were fished up and saved; at the cost of six thousand dollars, which were paid by the Plaintiff.—The hides thus saved were delivered to the Plaintiff's agent, and sold on his account. The whole sum, insured on the cargo of hides by the Defendants, was twenty-five thousand dollars.

On this state of facts it has been contended, that this insurance, although on perishable commodities, being in gross on a cargo consisting of a distinct number of articles, there may be a total loss as to some of them, although others be saved, and that for the part of the cargo, thus totally lost, the underwriters are liable notwithstanding the agreement respecting what are generally called memorandum articles. In support of this position it is said that the only intention of the parties, in coming to this agreement, was to obviate disputes concerning losses arising from the perishable nature of the goods insured, but that as this loss happened in another way, and is total as to the portion of the property in question, it ought not to be considered as excluded by the memorandum.

BENYS
v.
CHESA-
PEAKE
INS. CO.

Whatever may have been the motive to the introduction of this clause into policies of insurance, which was done as early as the year 1749, and most probably with the intention of protecting insurers against losses arising solely from a deterioration of the article, by its own perishable quality—or whatever ambiguity may once have existed from the term *average* being used in different senses, that is as signifying *a contribution to a general loss,* and also a *particular or partial injury* falling on the subject insured, it is well understood at the present day, with respect to such articles, that underwriters are free from all partial losses of every kind, which do not arise from a contribution towards a general average. It only remains then to examine, and so the question has properly been treated at bar, whether the hides, which were sunk and not reclaimed, constituted a total or partial loss within the meaning of this policy. It has been considered as total by the counsel of the assured, but the Court cannot perceive any ground for treating it in that way, inasmuch as out of many thousand hides which were on board, not quite eight hundred were lost; making in point of value somewhat less than one sixth part of the sum insured by this policy. If there were no memorandum in the way, and the Plaintiff had gone on to recover, as in that case he might have done, it is perceived at once that he must have had judgment only for a partial loss, which would have been equivalent to the injury actually sustained. But without having recourse to any reasoning on the subject, the proposition appears too self evident not to command universal assent, that when only a part of a cargo, consisting all of the same kind of articles, is lost in any way whatever, and the residue, (which in this case amounts to much the greatest part,) arrives in safety at its port of destination, the loss cannot but be partial, and that this must forever be so, as long as a part continues to be less than the whole. This loss then being a particular loss only, and not resulting from a general average, the Court is of opinion that the Defendants are not liable for it.

Having disposed of this point, it would seem as if much difficulty could not occur in deciding the other question, which has been made in this cause, and that is—whether the assured is not entitled to recover the

expenses which he was put to in saving part of the hides which had sunk.

This liability is supposed to result from that clause in the policy, which authorizes the assured, " in case " of any *loss or damage*, to sue labor and travel for, in " and about the defence, safeguard and recovery of the " goods, or any part thereof, to the charges whereof " the assurers will contribute according to the amount " of the sum insured." If this clause be construed with reference to what is most evidently its subject matter, that is *a loss within the policy*, and in connexion with other parts of the instrument, it seems impossible to misunderstand it, or that it should receive so extensive an application as the plaintiff is desirous of giving to it. The parties certainly meant to apply it only to the case of those losses or injuries for which the assurers, if they had happened, would have been responsible.— Having, in such cases only, an interest in rescuing or relieving the property, it is reasonable that then only they should defray the charges incurred by an effort made for that purpose ; but when a loss takes place, which cannot be thrown on them, it would require a much stronger and more explicit stipulation than we find in the policy to render them liable to contribute to such expenses. If a cargo be insured for a long voyage against sea risks only, and a capture intervene the very day after the vessel leaves port, it is very clear that the underwriter is not only not liable for such a loss, but that he derives an advantage from it, as his risk may be terminated thereby, and the whole premium be earned, and yet if the construction now endeavoured to be put on this clause should prevail, all the expenses of claiming a property, in which he had no interest, and which if condemned is a matter of indifference to him, and all the costs of pursuing it through an almost endless litigation, would be thrown, whether the pursuit were successful or otherwise, or an insurer who had taken care to restrict his liability to losses by perils of the sea only. The Court cannot subscribe to such an interpretation, when a more natural, rational, and obvious one, and that without departing from the letter of the instrument, presents itself, which is, that this clause can never apply but in such cases as would, if they happen, be losses (either partial or total) within the mean-

ing of the policy. We are therefore of opinion, that the underwriters not being answerable for the principal loss in this case, they cannot be so for the subsequent expenses which were incurred in recovering the property.

The judgment of the Court below is affirmed with costs.

