[L.A. No. 29726. In Bank. Mar. 12, 1971.]

YOUNG'S MARKET COMPANY, Plaintiff and Appellant, v.
AMERICAN HOME ASSURANCE COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Garibaldi & Lane, Abe Mutchnik and Warren J. Lane for Plaintiff and Appellant.

Long & Levit and David C. Bogert for Defendants and Respondents.

**OPINION**

**SULLIVAN, J.**—Plaintiff Young's Market Company appeals from a judgment declaring that the "sue and labor" clause of an insurance policy issued to it by defendant companies did not entitle it to be reimbursed for legal expenses incurred by it in successfully resisting an action by the State of Texas to confiscate a shipment of its liquor.

Plaintiff is a wholesale liquor dealer. Defendant insurance companies

issued to plaintiff a policy[1] of "Multiple Perils Personal Property Insurance" which as here relevant provided coverage "against all risks of physical loss or damage from any cause whatsoever . . . except as hereinafter excluded." An endorsement to the policy went on to set forth certain excluded perils, among which was "Loss or damage caused, directly or indirectly, by . . . (b) . . . seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade."

The policy also contained a "sue and labor" clause which provided: "SUE AND LABOR: In case of actual or imminent loss or damage it shall be lawful and necessary for the Insured, their factors, servants or assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof, without prejudice to this insurance; . . . to the charges whereof, the Company will contribute according to its proportion to the sum hereby insured."

On May 1, 1962, while the policy was in force, plaintiff purchased a cargo of 950 cases of liquor at a distillery in Kentucky and arranged for its shipment to California by truck. The cargo was routed through Texas by the carrier, and while it was passing through that state the truck was stopped for routine inspection by an officer of the highway patrol who inquired as to its contents. The driver, for reasons unexplained by the record, replied that the truck contained redwood furniture. The officer opened the truck in accordance with Texas law and discovered that it in fact contained liquor. Thereupon he asked that the driver produce the written manifest required by Texas law of common carriers transporting liquor.[2] Although such a manifest had been delivered to the carrier with the shipment, the driver for some reason did not produce it. The officer, acting pursuant to Texas law,[3] then seized the truck and cargo.

---

[1]According to the statement of facts stipulated to by the parties: "The ten defendant companies insuring plaintiff under the policy participate in the risk on a percentage basis. Said participation in the risk ranges from 7½% to 12½%."

[2]Article 666-27 of Vernon's Texas Penal Code provides in relevant part: "(a) It shall be *unlawful* for any person to *transport* into this State or upon any public highway . . . in this State any liquor unless the person accompanying or in charge of such shipment shall have present and available for exhibition and inspection, a written statement furnished and signed by the shipper, . . . (b) . . . Any alcoholic beverage so *unlawfully transported* or imported in this State is hereby declared to be an *illicit beverage.*" (Italics added.)

[3]Article 666-42, subdivision (a), of Vernon's Texas Penal Code provides in relevant part: "All *illicit beverages* as defined by this Act together with the containers and any device in which the beverage is packaged, and any wagon, buggy, automobile, water or aircraft, or any other vehicle, used for the transportation of any illicit beverage . . . may be *seized* with or without a warrant by an agent or employee of the Texas Liquor Control Board, or by any peace officer, . . ." (Italics added.)

The State of Texas brought an action seeking forfeiture of the truck and its cargo of liquor.[4] Plaintiff intervened in the action and the trial court held that it was entitled to the return of the liquor.[5] The state appealed, but the Court of Civil Appeals affirmed the judgment of the trial court. Its opinion stated in part: "The possession and *transportation* of the cargo here involved was *lawful until the violation by the truck driver of the common carrier.* When the lawful owner, Young's Market Company, immediately upon notification by the Texas Liquor Control Board of the violation by the truck driver, furnished the Board all information required by the Texas Liquor Control Act, fully complying with the provisions thereof and showing its innocence of any complicity in the unexplained violation by the truck driver, the cargo regained its lawful nature. It and the vehicles [*sic*] were *no longer contraband subject to confiscation.*" (Italics added.) (*State* v. *Young's Market Company* (Tex.Civ.App. 1963) 369 S.W.2d 659, 664.)

The State of Texas sought a hearing in the Supreme Court of Texas, but that court denied the petition.

Plaintiff expended $16,166.37 in legal expenses—a sum stipulated by the parties to be reasonable—in order to secure the release of the liquor in the Texas proceeding. It made demand upon defendants for this sum under the insurance policy issued by them. The claim was rejected by defendants on the ground that the expenses had been incurred in order to prevent a loss threatened by a risk expressly excluded by the policy—i.e., the risk of governmental seizure or confiscation. Plaintiffs thereupon commenced this action.

The trial court entered judgment for defendants. It found as here relevant that the policy in question "did not insure for the perils of 'confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade' "; that "[h]ad plaintiff not secured the release of said cargo of liquor, it would have sustained a loss by reason of confiscation by order of a government or public authority and by reason of contraband or illegal transportation," a loss specifically excluded from coverage by the policy; that "[p]laintiff cannot recover under the 'sue and labor' clause of the policies of insurance sued upon herein unless its expenses were incurred to preserve the insured property from a peril insured

---

[4] Article 666-42, subdivision (b) of Vernon's Texas Penal Code provides in relevant part: "It shall be the duty of the Attorney General, the District Attorney, and the County Attorney, or any of them, when notified by the officer making the *seizure,* or by the Texas Liquor Control Board, that such seizure has been made, to institute a suit for *forfeiture* of such alcoholic beverage and property, . . ." (Italics added.)

[5] The common carrier and the lienholder on the truck also intervened and secured judgment in their favor.

against"; that the sum expended by plaintiff "was not spent to preserve the cargo of liquor from a peril insured against"; and that therefore plaintiff was not entitled to recovery under the policy. Plaintiff appeals from the judgment.

At the outset it is clear—and plaintiff so conceded at oral argument—that the legal expenses in question are not recoverable under the basic "all risks" insuring clause of the policy but are recoverable if at all only under the "sue and labor" clause. The "all risks" insuring clause states that the policy "insures against all risks of physical loss or damage from any cause whatsover. . . ." Manifestly this language contemplates loss of or damage to *the insured property*[6] and is not intended to cover losses such as that here in question. Rather, as all parties recognize and as we shall explain below, it is the specific function of the "sue and labor" clause, which is in essence a separate supplementary insurance agreement,[7] to provide whatever coverage exists for expenses sustained in the preservation and protection of the insured property. Thus, the sole question before us is whether the expenses in question are recoverable under the "sue and labor" clause contained in the policy.

The "sue and labor" clause appearing in most marine and inland marine insurance policies is of ancient lineage, its forebears extending back —according to a leading case on the subject—at least into the seventeenth century. (*Reliance Insurance Company* v. *The Escapade* (5th Cir. 1960) 280 F.2d 482, 488-489, fn. 11.) ■ Such a clause makes express the duty implied in law on the part of the insured to labor for the recovery and restitution of damaged or detained property (Winter, Marine Insurance (3d ed. 1952) p. 393) and it contemplates a correlative duty of reimbursement separate from and supplementary to the basic insurance contract. "Its purpose is to encourage and bind the assured to take steps to prevent a threatened loss for which the underwriter would be liable if it occurred, and when a loss does occur to take steps to diminish the amount of the loss. Under this clause the assured recovers the whole of the sue and labor expense which he has incurred . . . and without regard to the amount of the loss or whether there has been a loss or whether there is salvage, and even though the underwriter may have paid a total loss

---

[6]The italicized language expressly appeared in the basic "all risks" insuring clause contained in the multiple perils policy which plaintiff had immediately prior to the policy here in question. Both policies were prepared by plaintiff's broker, and it is clear that no fundamental change in coverage was intended by the omission of this language in the policy now before us. Moreover, the statement of excluded perils manifestly indicates that the coverage intended is limited to loss or damage to the insured property.

[7]See 15 Couch on Insurance 2d (1966) section 55:123, page 552; Vance on Insurance (2d ed. 1930) section 255, pages 864-865.

under the main policy." (*White Star S. S. Co.* v. *North British & Merc. Ins. Co.* (E.D.Mich. 1943) 48 F.Supp. 808, 813; see *Reliance Insurance Company* v. *The Escapade, supra,* 280 F.2d 482, 488-489, fn. 11; 15 Couch on Insurance 2d (1966) § 55:123, p. 552; Vance on Insurance (2d ed. 1930) § 255, pp. 864-865.)

■ There is, however, a fundamental limitation upon the insurer's duty under a "sue and labor" clause to compensate the insured for expenses incurred in the preservation and protection of insured property: the expenses in question must be incurred to preserve the insured property *from a peril insured against under the basic policy.* "Since an assured has the duty toward his underwriter to exercise the care of a prudent uninsured owner to protect insured property in order to minimize or prevent the loss from the occurrence for which the underwriter would be liable under the policy, the clause undertakes to reimburse the assured for these expenditures which are made *primarily for the benefit of the underwriter* either to reduce or eliminate a *covered* loss altogether. . . . [Par.] Taking the analysis through the next step, it is obvious that since the clause is to reimburse the assured for expenses incurred in satisfying the assured's duty to the underwriter, there is no such duty where the policy, for one reason or another . . . does not apply. . . . The obligation comes into being only when the action taken is to minimize or prevent a loss *for which the underwriter would be liable.* If the underwriter would not be liable at all . . . there would be no contractual obligation to repay sue and labor." (Fn. omitted; italics added.) (*Reliance Insurance Company* v. *The Escapade, supra,* 280 F.2d 482, 488-489; see also *Home Ins. Co.* v. *Ciconett* (6th Cir. 1950) 179 F.2d 892, 895; *White Star S. S. Co.* v. *North British & Merc. Ins. Co., supra,* 48 F.Supp. 808, 812-813; *Berns & Koppstein, Inc.* v. *Orion Insurance Co.* (S.D.N.Y. 1959) 170 F.Supp. 707, 719; 15 Couch on Insurance 2d (1966) § 55:125, pp. 552-553; Vance Insurance (2d ed. 1930) § 255, pp. 864-865.[8])

The United States Supreme Court, in an early case dealing with the related matter of recovery under a "sue and labor" clause in the context of a "total loss" policy,[9] said of a clause almost identical to that here in-

___

[8]Professor Vance (at p. 865) states the matter thus: "The loss or damage which the insured labors to avoid must be such that it would be chargeable to the insurer if it should occur. The purpose of the clause is not to stimulate philanthropic heroism, but to lessen the loss for which the underwriter would be liable. The insurer is certainly not commercially interested in securing protection of the venture against a misfortune for which he had declined to assume responsibility." (Fns. omitted.)

[9]"A corollary to the general rule that there can be no recovery by an insured under a sue and labor clause of a marine insurance policy unless the expenses in question were incurred to preserve the insured property from a peril insured against, is the rule that where a marine policy insures against actual total loss only, there can be no

volved: "If this clause be construed with reference to what is most evidently its subject-matter, that is, a loss within the policy, and in connection with other parts of the instrument, it seems impossible to misunderstand it, or that it should receive so extensive an application as the plaintiff is desirous of giving to it. The parties certainly meant to apply it only to the case of *those losses or injuries for which the insurers, if they had happened, would have been responsible.* Having, in such cases only, an interest in rescuing or relieving the property, it is reasonable, that then only they should defray the charges incurred by an effort made for that purpose; but when a loss takes place, which cannot be thrown on them, it would require a much stronger and more explicit stipulation than we find in the policy, to render them liable to contribute to such expenses." (Italics added.) (*Biays* v. *Chesapeake Insurance Co.* (1813) 11 U.S. (7 Cranch) 415, 418 [3 L.Ed. 389, 390].)

Applying these principles to the case at bench, we think that the "sue and labor" clause of the subject policy does not entitle plaintiff to be reimbursed for the legal expenses sustained by it in the Texas proceeding.

■ Clearly if plaintiff had not undertaken the efforts which it did, it would have suffered the loss of its entire cargo of liquor. That loss, however, would not have been covered under the basic "all risks" insuring clause if it had resulted from "seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade." The opinion of the Texas Court of Civil Appeals, which we have summarized above, makes it clear that the issue in the Texas proceeding was whether the plaintiff's cargo was being *illegally transported* within the meaning of article 666-27 of Vernon's Texas Penal Code (set forth at fn. 2, *ante*). If that issue had been determined in favor of the State of Texas and against plaintiff the cargo would have been an "illicit beverage" within the meaning of article 666-42 of the same code (set forth at fn. 3, *ante*) and would therefore have been *contraband* subject to *confiscation* and forfeiture. Thus, because the violation was shown by plaintiff to be a technical one, and the transportation therefore not "illegal," the Texas court concluded that the cargo was "no longer *contraband* subject to *confiscation.*" (Italics added; 369 S.W.2d at p. 664.) Absent plaintiff's efforts, however, it would have sustained loss as a direct result of a peril expressly excluded under the terms of the policy.[10]

---

recovery for sue and labor expenses incurred to preserve the insured property from anything other than an actual total loss." (Fns. omitted.) (15 Couch on Insurance 2d (1966) § 55:126, p. 553.)

[10]It is this point which the dissenting opinion, and the former opinion of the Court of Appeal upon which it is based, fail to grasp. Clearly "no 'confiscation' occurred here." But the property was subject to the peril of confiscation and would have been

When a policy of insurance in plain language excludes a particular peril from coverage that language must be respected. (See *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914], and cases there cited; see also *Matsuo Yoshida* v. *Liberty Mutual Insurance Co.* (9th Cir. 1957) 240 F.2d 824, 826-827.) This is especially so when as in the instant case the policy is drafted by the insured or his agent. (See fn. 6, *ante.*)

Because the peril to which plaintiff's property was subject was a peril expressly excluded from coverage under the policy, its efforts to rescue the property from that peril were not undertaken for the benefit of the insurer but rather for its own benefit. Under the settled interpretation of "sue and labor" clauses which we have expounded above, no reimbursement under such a clause is permitted under these circumstances.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., and Burke, J., concurred.

**MOSK, J.**—I dissent.

The Court of Appeal properly reversed the trial court in a well-reasoned analysis by Justice Thompson, concurred in by Presiding Justice Wood and Justice Gustafson. Omitting the factual recitation, I adopt the relevant portion of the Court of Appeal decision ((Cal.App.) 82 Cal.Rptr. 855, 858-859) as my opinion in dissent:

The sole issue on this appeal is the applicability of the exclusionary provision of the endorsement to the insurance policy to the type of loss here involved. Parol evidence was neither offered nor received to aid in interpretation of the policy. We therefore are not bound by the construction given the policy by the trial court but must make our own determination. In making that determination, we are bound by the rule requiring that any uncertainty in the policy be resolved against the insurer and in favor of coverage. (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal. 2d 423 [296 P.2d 801, 57 A.L.R.2d 914]; *Gray* v. *Zurich Insurance Co.*, 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168].)

Construction of the policy in the context of appellant's claim requires

---

confiscated in fact but for plaintiff's efforts. Because confiscation was an excluded peril under the policy, and any loss sustained as a result of that peril would not have been recoverable, plaintiff's efforts to prevent that loss—whether successful or unsuccessful—were undertaken for its own benefit and were not subject to reimbursement under the "sue and labor" clause. To maintain the contrary is to maintain that an insured may recover under a "sue and labor" clause for expenses incurred by it to prevent a loss for which the insurer would not have been liable had it occurred.

our consideration of three classes of loss excluded by the endorsement from coverage by the policy: (1) loss from confiscation by government authority; (2) loss by reason of risk of contraband; and (3) loss from illegal transportation. We conclude that the facts here present disclose a loss which falls in none of those categories.

In the context that the term is used in the policy, no "confiscation" occurred here. Confiscation by government authority does not occur until there has been final action appropriating the property confiscated to the authority taking the action. The concept must be distinguished from that of governmental "seizure" which can be a step preliminary to confiscation pending final action but which is not the same thing as confiscation itself. (11 Couch on Insurance 2d, § 42:468.) The record in the case at bench discloses that the Texas authorities seized but did not confiscate the cargo of liquor. The Texas Court of Appeal in upholding appellant's claim that the liquor should be returned to it stated: "The cargo was properly halted and seized by the officers of the State of Texas because of the violation of the law on the part of the driver of the carrier's vehicle. But Young's Market Company had no control over the transportation, and no complicity in or knowledge of the law violation . . . [I]n our opinion it is not contemplated by the Texas Liquor Control Act that under these circumstances a lawful and innocent owner of property should be deprived of the value thereof by confiscation."

In the context of the insurance policy which is the subject matter of this litigation, the loss which here occurred was not by reason of risk of contraband. Here again we are aided by the construction given the transaction by the Court of Appeal of the State of Texas. The opinion of that Court declares: "In the instant case the cargo was not contraband. The transportation of the liquor was lawful from its inception and the only violation shown was on the part of a truck driver who was the employee of a common carrier, over whom the owner of the cargo had no control."

We conclude, also, that in the context of the policy the loss here involved was not a loss from illegal transportation. The seizure out of which the expenses claimed by appellant arose was not the result of a transportation which was illegal. It occurred because the driver in charge of the cargo failed to supply the Texas authorities documentation which had been delivered to the carrier with the cargo. The incidental illegal activity on the part of the driver is not that type of risk which is excluded by the "illegal transportation" clause of the policy. (See 11 Couch on Insurance 2d § 43:209.)

Having determined that the seizure by the Texas authorities was not the result of a risk excluded by the policy, we must conclude that the sum

reasonably expended by appellant to recover its property is reimbursable by the insurer (respondents). That sum constitutes an expenditure to defend, safeguard and recover insured property within the "Sue and Labor" clause quoted at the outset of this opinion. Such expenditures constitute a loss reimbursable by the policy. (6 Appleman on Insurance, § 3794 and cases there cited.)

The judgment should be reversed.

Peters, J., concurred.