[No. A025137. First Dist., Div. One. May 28, 1986.]

FIREMAN'S FUND INSURANCE COMPANY,
Plaintiff, Cross-defendant and Appellant, v.
FIBREBOARD CORPORATION,
Defendant, Cross-complainant and Appellant;
TRUCK INSURANCE EXCHANGE et al.,
Defendants, Cross-defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Certified for partial publication pursuant to rules 976.1 and 976 (b) of the California Rules of Court. The portion of the opinion to be published follows.

COUNSEL

Stephen McReavy, Jeffrey Kaufman, Wallace Tice, Kevan T. Hunt and Hall, Henry, Oliver & McReavy for Plaintiff, Cross-defendant and Appellant.

E. Judge Elderkin, William R. Irwin, Donald W. Brown, Tom M. Freeman, L. Christopher Vejnoska, Stephen S. Sayad, Laura J. Remington and Brobeck, Phleger & Harrison for Defendant, Cross-complainant and Appellant.

Patrick J. Hagan, Mark A. Stump, Kincaid, Gianunzio, Caudle & Hubert, Charles A. Lynberg, R. Jeff Carlisle, Randall J. Peters, Timothy M. Thornton, Jr., Lynberg & Nelsen, Raymond Coates, Catherine A. Yanni, Low, Ball & Lynch, P. Richard Colombatto, Misciagna, Schneider & Colombatto, Arnold L. Rosen, Shelden, Kulchin & Klein, Royal F. Oakes, Barger & Wolen, Robert S. Warren, Fred F. Gregory, Dean J. Kitchens, Patrice I. Kopistansky, Gibson, Dunn & Crutcher, Hancock, Rothert & Bunshoft, Barry L. Bunshoft, Patrick A. Cathcart and Philip R. Matthews for Defendants, Cross-defendants and Respondents.

OPINION

**RACANELLI, P. J.**—In this appeal we consider the meaning and interpretation of a liability exclusion clause contained in each of several insurance policies of an asbestos products manufacturer. We affirm the judgment below for reasons which we will explain.

## BACKGROUND

From 1928 to 1972, appellant Fibreboard Corporation (hereafter Fibreboard) manufactured and sold insulation products containing asbestos. Fibreboard is now enmeshed in litigation involving literally thousands of personal injury claims by workers exposed to asbestos materials and estimates its potential liability upwards of several hundred million dollars.

Respondent and appellant Fireman's Fund Insurance Company (hereafter Fireman's Fund) was Fibreboard's primary comprehensive general liability insurance carrier during the periods 1941–1950 and 1962–1977. Following a dispute Fireman's Fund cancelled Fibreboard's policy and, in 1979, instituted the underlying declaratory relief action against Fibreboard and its other insurance carriers. After the sustaining of a demurrer, Fireman's Fund named Fibreboard's excess coverage carriers as additional defendants; Fibreboard responded by filing its own cross-complaint for declaratory relief and damages.

In 1983, respondent insurance companies, including Truck Insurance Exchange as the primary carrier (hereafter Truck), who had insured Fibreboard in 1977 and 1978, moved for summary judgment on the basis of an asbestos-related injury exclusion clause in their respective policies.[1] After extensive discovery and the submission of lengthy documentation, the trial court granted the several motions for summary judgment and awarded costs against both Fibreboard and Fireman's Fund. Both have appealed. Fibreboard's appeal presents the major question whether summary judgment was appropriately granted for respondents on the basis of the insurance policy exclusions for asbestos-related injuries.

### APPEAL BY FIBREBOARD

### I

We first summarize relevant principles governing our review of the challenged summary judgments.

■ Under the authority of the statute then in effect, a motion for summary judgment "*shall* be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., former § 437c, subd. (c), italics added.) Thus, summary judgment was mandatory if the statutory requirements were met. The procedure is designed to test whether any material triable issues of fact exist, but not to resolve disputed factual issues. (See *Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 589 [177 Cal.Rptr. 268].)

And where defendants are the moving parties, as here, they must either negate a necessary element of the plaintiff's case or state a complete defense. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].) To avoid a summary judgment, plaintiff must show a material triable issue of fact with respect to the offered defense or the negated essential

---

[1]The basic asbestos exclusion, as contained in the Truck policy, excludes from coverage "liability for personal injury, sickness or disease including death, arising from exposure and/or alleged exposure to asbestos dust created during use of products manufactured by the Insured which contain asbestos." Virtually identical language of exclusion is contained in the policies of respondents Mission, Pine Top, Lloyd's and Lexington.

The exclusion clause contained in the policy issued by respondent Central National is somewhat broader excluding liability for third party claims and "any obligation under workers' compensation, . . . arising from exposure and/or alleged exposure to asbestos dust created during the manufacture of or use of products manufactured by the Insured which contain Asbestos."

The other policies exclude first-party claims by Fibreboard employees elsewhere in the policy. For purposes of discussion, however, we consider the exclusions together.

element. (*Ibid.*) "[N]o amount of factual conflicts upon other aspects of the case will affect the result and the motion for summary judgment should be granted. [Citation.]" (*Ibid.*)

 An order of summary judgment will not be reversed in the absence of a clear showing of abuse of discretion. (*Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc., supra,* 128 Cal.App.3d at p. 589; *Brewer* v. *Home Owners Auto Finance Co.* (1970) 10 Cal.App.3d 337, 341 [89 Cal.Rptr. 231].) However, our "[r]eview of the trial court's determination involves pure matters of law: Reassessment of the legal significance of the documents upon which the trial court acted." (*La Rosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744 [176 Cal.Rptr. 224]; see also *Fanelli, Antuzzi, Bonacorsi Painting, Inc.* v. *Santa Clara Unified School Dist.* (1983) 141 Cal.App.3d 686, 689 [190 Cal.Rptr. 515].)

## II

In essence, Fibreboard argues that summary judgment was improperly granted because the proffered evidence was conflicting as to the parties' intention regarding the asbestos exclusion. The argument deflects the dispositive issue revealed by our analysis and is, in any case, substantively unconvincing.

 The starting point, of course, is the plain meaning of the policy language. "The best evidence of the intent of parties to an insurance policy is the policy itself." (*City of Mill Valley* v. *Transamerica Ins. Co.* (1979) 98 Cal.App.3d 595, 599 [159 Cal.Rptr. 635].) The policies issued by Truck and the excess carriers expressly excluded coverage for liability for injury, sickness, disease or death "arising from exposure . . . to asbestos dust created during use of products manufactured by the insured which contained asbestos." Plainly, the exclusion clause purports to deny coverage for the injuries described due to exposure to asbestos dust from use of products manufactured by Fibreboard.

"It is the general rule that an insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected. [Citation.]" (*Dart Transportation Service* v. *Mack Trucks, Inc.* (1970) 9 Cal.App.3d 837, 847 [88 Cal.Rptr. 670]; accord *National Ins. Underwriters* v. *Carter* (1976) 17 Cal.3d 380, 386 [131 Cal.Rptr. 42, 551 P.2d 362]; *Aas* v. *Avemco Ins. Co.* (1976) 55 Cal.App.3d 312, 317 [127 Cal.Rptr. 192].) In reviewing the terms of an insurance policy, courts must interpret the words according to their "plain meaning" (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807) or "'. . . their common, ordinary and customary meaning.' [Citation

omitted.]" (*City of Mill Valley* v. *Transamerica Ins. Co., supra,* 98 Cal.App.3d 595, 602) and will not adopt "a strained or absurd interpretation in order to create an ambiguity where none exists. [Citations.]" (*Reserve Insurance Co.* v. *Pisciotta, supra,* 30 Cal.3d at p. 807; see also Civ. Code, § 1638.)

Here, the language of the exclusion clause is clear and unambiguous: The insurance companies eliminated coverage for asbestos-related injuries arising from exposure during use of the asbestos product. "When a policy of insurance in plain language excludes a particular peril from coverage that language must be respected." (*Young's Market Co.* v. *American Home Assur. Co.* (1971) 4 Cal.3d 309, 316 [93 Cal.Rptr. 449, 481 P.2d 817].)

■ Nor do we believe, as Fibreboard alleges, that ambiguity of the exclusion clause necessarily implicates the general rule of strict construction against the insurer and in favor of the insured. (See, e.g., *Reserve Insurance Co.* v. *Pisciotta, supra,* 30 Cal.3d at p. 807.) The salutary rule of construction is not applicable under the circumstances shown. The rationale underlying the rule of strict construction was recently restated by our high court in the following manner: "the principle that ambiguities in insurance policies must be strictly construed against the insurer stems, primarily, from a recognition of the typical relationship between the parties. Ordinarily, we are faced with a conflict between the purchaser of an insurance contract and the insurance carrier. In such cases, it is typically the carrier who drafts the insurance contract, unilaterally, and for policy reasons is thus held responsible for any ambiguity in language. (*Bareno* v. *Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 878 [103 Cal.Rptr. 865, 500 P.2d 889]; see also *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 102 [109 Cal.Rptr. 811, 514 P.2d 123] ['all ambiguities in an insurance policy are construed against the insurer-draftsman'].) And, in the typical situation, the policy represents a contract of adhesion 'entered into between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a "take it or leave it" basis . . . .' (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) These factors are not present here. The terms of this policy were negotiated between the carrier and CHA, and the language in contention was the product of joint drafting. And, it is apparent that CHA, acting as representative of hospitals throughout the state and in a favorable competitive position, enjoyed substantial bargaining power vis-à-vis the carrier." (*Garcia* v. *Truck Ins. Exchange* (1984) 36 Cal.3d 426, 438 [204 Cal.Rptr. 435, 682 P.2d 1100]; see also 13 Appleman, Insurance Law and Practice (1976) § 7402, pp. 300-301, cited in fn. 6 of *Garcia.*)

Here, as in *Garcia,* the typical relationship (unequal bargaining strength, use of standardized language by more powerful insurer-draftsman) simply did not exist. Rather, two large corporate entities, each represented by specialized insurance brokers or risk managers, negotiated the terms of the insurance contracts. Neither Truck nor other respondents drafted or controlled the policy language: thus, the reasons for the general rule of construction—"to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy" (*Reserve Insurance Co.* v. *Pisciotta, supra,* 30 Cal.3d at p. 808)—were nonexistent. (See also *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 711 [131 Cal.Rptr. 882, 552 P.2d 1178] [same rationale for interpreting contracts of adhesion].) In fact, the record clearly shows that Fibreboard itself proposed or drafted the language for the asbestos exclusion.[2]

None of the authorities relied upon by Fibreboard reflects a comparable factual situation where the insured itself drafted or proposed the policy language. (Cf. *Travellers Indem. Co.* v. *United States* (9th Cir. 1976) 543 F.2d 71, 74-75.) Moreover, to the extent that any ambiguity exists, ordinarily it would be interpreted *against* Fibreboard, the party who caused the uncertainty to exist. (Civ. Code, § 1654.)

■ But assuming ambiguity is shown as Fibreboard persistently argues in support of the introduction of extrinsic evidence, the test of admissibility of such explanatory extrinsic evidence is "whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.]" (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].) Our analysis of the proffered evidence further con-

---

[2]The deposition testimony of Woodrow B. Anderson, Risk Manager of Fibreboard, is illuminating: "[by Mr. Anderson] . . . the language that appears as exclusion (j) is language to which I agreed and ultimately that was what we proposed. We proposed the language to the insurer. . . .

"MR. GREGORY: Q. Did you mean Fibreboard when you said 'we'?

"A. Fibreboard and the broker, Reed Shaw. . . .

"A. [by Mr. Anderson] We agreed—by 'we,' again, from a *marketing strategy point of* view, early on we were talking in terms of going to the market to replace the Fireman's Fund coverage.

"We agreed that we would have to approach the markets with—in mind, having in mind a potential or a probable exclusion for asbestos products. This was an agreement between not only myself and Reed Shaw but also between myself and Johnson and Higgins.

"We did not feel we could place the coverage without such an exclusion. My involvement with this particular exclusion was that this is the one that I was proposing. . . .

"Q. Well, Mr. Anderson, did you take it upon yourself, your own initiative, to draft an exclusion? A. Yes."

vinces us that Fibreboard's interpretation of the exclusion clause is not a meaning to which the language is "reasonably susceptible."[3]

As previously discussed, Fibreboard itself, acting through its agent, Woodrow B. Anderson, essentially drafted the exclusion clause. Truck would not have insured Fibreboard if all asbestos-related injury claims, a matter of wide notoriety, were not excluded.

Fibreboard's argumentative evidentiary construct is misleading. First, we reject Fibreboard's assertion of its unlimited exposure to potential claims as a result of the "new" market share theory of liability articulated by the court in *Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061]. The assertion reflects a misunderstanding of both the holding in *Sindell* and the scope of the policy exclusion. *Sindell* created no *new* theory of liability but essentially shifted the burden of proof: If a manufacturer is unable to demonstrate that it could not have made the product which caused plaintiff's injuries, it would be liable for damages in the same proportion as its market share. (*Id.* at pp. 611-612.) Thus, it is still held responsible but only for an amount proportionate to its share of the market. (*Id.,* at pp. 612-613.) And Anderson's deposition unequivocally reflects his understanding that any such joint and several liability was excluded from the policy. Moreover, even the perceived "new" liability theory based on asbestos exposure would not be covered because the insurers specifically refused to assume *any* liability for asbestos-related personal injuries. (See *Aas* v. *Avemco Ins. Co., supra,* 55 Cal.App.3d 312, 319.) Since no coverage was ever extended, no liability could be fastened even under the most liberal interpretation of the *Sindell* doctrine.

Secondly, no support is found for Fibreboard's ancillary contention that asbestos claims not covered by the exclusion could still arise under a theory of "dual capacity," a doctrine now largely abolished by the Legislature. (Lab. Code, §§ 3601, 3602 as amended; Stats. 1982, ch. 922, §§ 5-6, pp. 3366-3367; *Perry* v. *Heavenly Valley* (1985) 163 Cal.App.3d 495, 499-500 [209 Cal.Rptr. 771].) While Fibreboard acknowledges the limited survival of that doctrine, it points to continuing liability exposure in *other*

---

[3]We note that the record reflects that no claims for such policy coverage were tendered by Fibreboard to any of respondent companies under the policies at issue. "The 'construction given the contract by the acts and conduct of the parties with knowledge of its terms, *before any controversy has arisen as to its meaning,* is entitled to great weight and will, when reasonable, be adopted and enforced by the court.' (Italics added.) (*Woodbine* v. *Van Horn* (1946) 29 Cal.2d 95, 104 [173 P.2d 17].)" (*Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 296-297 [85 Cal.Rptr. 444, 466 P.2d 996]. Fn. omitted.)

Respondents point out that Fibreboard began to dispute the exclusion clause only after it became a subsidiary of Louisiana Pacific, a self-insurer.

jurisdictions. But assuming such hypothetical exposure, any asbestos-related injuries sustained by employees due to exposure to asbestos dust would arise from the "use" of asbestos, whether during installation or the process of manufacturing, within the meaning of the exclusion clause. Philip Beauchamp, Fibreboard's own insurance broker, acknowledged in his deposition that employees in such a situation were to be covered by the exclusion.

Fibreboard's final argument—that asbestos "particles" as distinguished from "dust" might not be excluded—is unsupported by the record[4] and directly refuted by Anderson's testimony: even secondary exposure (for example, while laundering an asbestos worker's clothes) was intended to be excluded from policy coverage.

Thus, we find no other interpretation to which the language of the policy exclusion is "reasonably susceptible." (Cf. *Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11, 16, 20 [92 Cal.Rptr. 704, 480 P.2d 320].) Fibreboard has persistently ignored the testimony of all parties to the insurance policy negotiations that they expressly intended to exclude from coverage any and all asbestos-related personal injury claims. Truck and the other respondent carriers refused to insure Fibreboard for any liability for injury due to exposure to asbestos dust, and their respective policies of insurance clearly and unambiguously so provided. Accordingly, the trial court correctly determined that they were entitled to summary judgment on the basis of the agreed exclusion.

APPEAL BY FIREMAN'S FUND*

. . . . . . . . . . . . . . . . . . . . . . . .

The summary judgment and orders awarding costs, and each of them, are affirmed.[6]

Elkington, J., and Newsom, J., concurred.

---

[4]A point conceded by Fibreboard during oral argument.

*See footnote, page 462, *ante*.

[6]In light of our decision affirming the summary judgment below, we see no reason to stay the appeal as to Mission Insurance Company, now in conservatorship.

Pursuant to Fibreboard's request for dismissal, the appeal as to respondents Turegum Insurance Company, Bellefonte Insurance Company and Assicurazioni Generali, S.p.A. only is dismissed.