**NEW ENGLAND REINSURANCE CORPORATION, a corporation, and First State Insurance Company, a corporation, Plaintiffs, and Counter-Defendants,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, a corporation, Defendant, and Counter-Claimant.**

**No. CV 84–916–PAR.**

United States District Court,
C.D. California.

Aug. 29, 1986.

Erwin E. Adler, Teresa R. Tracy, Richards, Watson, Dreyfuss & Gershon, Los Angeles, Cal., for New England Reinsurance Corp. and First State Ins. Co.

Andrew J. Waxler, Flahavan, Hudson & Francis, Los Angeles, Cal., for Nat. Union Fire Ins. Co.

## MEMORANDUM OF DECISION AND ORDER

RYMER, District Judge.

This is an action brought by plaintiffs, New England Reinsurance Company ("NERE"), and First State Insurance Company ("First State") for declaratory relief and for damages under California unfair competition law against defendant National Union Fire Insurance Co. ("National Union"). Plaintiffs seek a declaratory judgment that National Union is obligated under a "claims made" insurance policy ("the policy") to defend and indemnify certain members of the Los Angeles County Bar Association ("insured"), and reimburse NERE for amounts it has expended in defending the insureds. Defendant's counterclaim seeks declaratory relief that National Union is not obligated to defend the alleged insureds and that it is entitled to reimbursement from NERE for any costs it has incurred defending or indemnifying the insureds. Jurisdiction is invoked pursuant to diversity of citizenship, 28 U.S.C. § 1332.

Defendant now moves for summary judgment against plaintiff's first amended complaint, and on its counterclaim pursuant to Fed.R.Civ.P. 56 on the ground that its insurance policy unambiguously restricts coverage to those claims made and reported during the policy period, and that the uncontroverted facts show that all claims defendant denied were reported after the policy period. Plaintiff has filed a reply motion for partial summary judgment on the ground that, as a matter of law, defendant may not use a notice provision to deny coverage, and must demonstrate actual prejudice from the delay in reporting, and further that defendants are now estopped by their conduct from proving that actual prejudice resulted from the insureds' delay in reporting their claims.

*Summary Judgment Standard*

Under Rule 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law." Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

*Uncontroverted Facts*

1. Plaintiff and counter-defendant NERE is a corporation organized and existing under the laws of the State of Massachusetts, having its principal place of business in the State of Massachusetts. Plaintiff and counter-defendant First State is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in the State of Massachusetts. The corporations are affiliated. First Amended Complaint ¶ 1.

2. Defendant and counter-claimant National Union is a corporation organized and existing under the laws of the State of Pennsylvania, having its principal place of business in the State of New York. *Id.* at ¶ 2.

3. In or about April, 1978, National Union entered into an agreement with the Los Angeles County Bar Association ("Association") under which it agreed to provide Association members with legal malpractice insurance coverage. *Id.* at ¶¶ 10–15; 16–18.

4. Section I, "Coverage," of the Insuring Agreement obligates National Union to indemnify the insured on account of damages paid "because of any claim or claims ... first made against the insured and reported to the Company during the policy period." A claim is to be considered "reported" when the Company first receives written notice of the claim. Exh. A, First Amended Complaint; Defs. Exh. B.

5. Section IV of the "Conditions" section of the Insuring Agreement provides that, following cancellation or non-renewal by either the insured or insurer, the insured can purchase, for an additional premium, an unlimited extended reporting period for all acts, errors, and omissions oc-

curing in, but not reported, prior to the expiration of the policy period. Exh. A, First Amended Complaint; Defs. Exh. B.

6. Section VII of the "Conditions" section requires that "upon the insured's becoming aware of any act, error or omission which could reasonably be expected to be the basis of a [covered] claim or suit, written notice shall be given ... to the Company ... as soon as practicable, together with the fullest information obtainable. If a claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative." *Id.*

7. The front of the National Union Policy contains the following written notice: "Except to such extent as may otherwise be provided herein, the coverage of this policy is limited generally to liability for only those claims that are first made against the insured and reported to the Company while the policy is in force. Please review the policy carefully and discuss the coverage thereunder with your insurance agent or broker." Defs. Exh. B.

8. When National Union's coverage ended in 1983, plaintiff NERE succeeded National Union as the carrier providing malpractice insurance to members of the Association. First Amended Complaint ¶ 9.

9. At the time National Union's coverage expired, a number of Association members had claims against them for legal malpractice which were as yet unreported to National Union. National Union denied coverage on all claims against the insureds made during the policy period, but not reported to National Union until after the expiration of coverage. *Id.* at ¶ 7.

10. National Union denied these claims solely because they were not reported to National Union within the policy period as required by Section I of the "Insuring Agreement" section of the policy. *Id.* at ¶ 13.

*Facts for which the dispute is not material*

1. The number of insureds who had claims filed against them, but did not re-

port the claims to National Union within the policy period. This dispute is not material in light of the determination that coverage of the National Union policy does not extend to those claims reported after the policy period.

2. What amount, if any, plaintiffs have expended in defending claims of the insureds for whom National Union denied coverage. This dispute is not material in light of the determination that coverage of the National Union policy does not extend to those claims reported after the policy period.

3. Whether the notice provision in Section VII is applicable to claims not reported during the policy period. This dispute is not material in light of the clear language of the National Union policy establishing coverage only for claims made and reported during the policy period. The conditions section only applies to claims first determined to be covered by the policy. *Zuckerman v. National Union Fire Insurance Co.*, 100 N.J. 304, 495 A.2d 395, 406 (1985).

*Nature of National Union's Policy*

Legal malpractice insurance is commonly known as "errors and omissions" coverage. Appleman, 7A *Insurance Law and Practice* 309; Comment, *The "Claims Made" Dilemma in Professional Liability Insurance*, 22 U.C.L.A.L.Rev. 925 (1975). Only two types of errors and omissions insurance are generally recognized. One is "occurrence" coverage, consisting of a "policy in which the coverage is effective if the negligent act or omitted act occurs within the policy period, regardless of the date of coverage." *Insurance Law and Practice* at 313. The second is "discovery" or "claims made" insurance, "wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insured within the policy term." *Id.* California recognizes both claims made and occurrence insurance policies as lawful forms of insurance coverage. *See Northwestern Title Security Co. v. Flack*, 6 Cal.App.3d 134, 143–44, 85 Cal. Rptr. 693, 698 (1970); Cal.Ins.Code § 11580.01.

National Union's policy is ·in the nature of a "claims made" policy in that the policy covers only those claims brought against the insured and reported to the insurer during the policy period. *See VTN Consolidated, Inc. v. Northbrook Insurance Co., Inc.*, 92 Cal.App.3d 888, 891, 155 Cal.Rptr. 172, 173 (1979). National Union contends that its policy of insurance is unambiguous, and, as a condition precedent to coverage under the policy, the insured must report a claim, as defined under the policy, within the policy period. National Union also contends that no insured reported any of the claims in question within the policy period, and therefore, as a matter of law, the insureds were not covered under the National Union policy. Plaintiffs do not dispute these assertions, but argue that National Union is not permitted, as a matter of law and public policy, to write a claims made policy with a requirement of notice to the insurer as part of the insuring agreement.

■ As a general rule "an insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Fireman's Fund Ins. Co. v. Fibreboard Corp.*, 182 Cal. App.3d 462, 466, 227 Cal.Rptr. 203, 205 (1986); *VTN Consolidated*, 92 Cal.App.3d at 891–92, 155 Cal.Rptr. at 173–74; *Chamberlin v. Smith*, 72 Cal.App.3d 835, 850, 140 Cal.Rptr. 493, 501 (1977), *accord National Ins. Underwriters v. Carter*, 17 Cal.3d 380, 386, 131 Cal.Rptr. 42, 46, 551 P.2d 362, 366 (1976). In interpreting an insurance policy, the Court should give the words their plain reading, and not strain to create an ambiguity where none exists. *Fireman's Fund*, 227 Cal.Rptr. at 205; *see also Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d 800, 807, 180 Cal.Rptr. 628, 640, 640 P.2d 764, 776 (1982). Here the language of the scope of coverage is clear and unambiguous: the policy only covers those claims made and reported to the insurance company during the policy period. *See VTN Consolidated*, 92 Cal.App.3d at 891–92, 155 Cal.Rptr. at 173–74.

Plaintiff argues that because California is a notice-prejudice state, *see e.g., Moe v. Transamerica Title Ins. Co.*, 21 Cal. App.3d 289, 302, 98 Cal.Rptr. 547, 555 (1971), an insurer, as a matter of law, must demonstrate prejudice from the failure of an insured to adhere to a notice provision, prior to denying coverage. However, in all the cases so holding, the courts were concerned with a defense of breach of the notice provision of the insurance agreement; in none of the cases was the court construing a reporting/notice requirement set out in the insuring agreement itself. *Cf. e.g., Northwestern Title Security Co. v. Flack*, 6 Cal.App.3d 134, 85 Cal.Rptr. 693 (1970); *Campbell v. Allstate Ins. Co.*, 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155 (1963); *Healy Tibbitts Const. Co. v. Foremost Ins. Co.*, 482 F.Supp. 830 (N.D.Cal. 1979). The notice provisions of this policy would be within the scope of the California decisions only if an event within the terms of coverage had first occurred, i.e., there had been a claim against the insured which had been reported to the insurer within the policy period.

In the *Northwestern Title* and other "notice prejudice" cases an insured event, as defined by the policy, had occurred, and therefore the question was whether or not a condition of coverage had been met by the insured. *See id.* The National Union policy unambiguously restricts the *coverage* period to only include those situations where a claim is both made and reported to the insurance company, and not merely added as a condition precedent to recovery after the occurrence of an insurable event. The question here is whether California law prohibits National Union from writing a "claims made" policy which defines an insurable claim as one both made and reported to the insurer in the policy period.

Plaintiffs argue that National Union is not at liberty to enlarge, circumvent, defeat or modify any state insurance law through a provision in its policy, *Wildman v. Government Employees' Insurance Co.*, 48 Cal.2d 31, 37–40, 307 P.2d 359, 363–365 (1957), and that by placing the words "and actually communicated to the company in the policy period," National Union has, in effect, created an additional requirement to the claims made provisions in Cal.Ins.Code § 11580.01.

Section 11580.01 permits the writing of claims made policies for legal liability arising from the rendering of professional services if the application or proposal of insurance complies with subdivision (b) and the policy complies with subdivision (c). Subdivision (b) requires that an application for claims made insurance recite "prominently and conspicuously" that it is a proposal for claims made coverage. Subdivision (c) requires that the policy contain a legend substantially to the following effect: "Except to such extent as may otherwise be provided herein, the coverage of this policy is limited generally to liability for only those claims that are first made against the insured while the policy is in force." Plaintiffs contend that subdivision (c) sets forth the scope of allowable claims made coverage, and the attempt by National Union to add a further condition of notice acts to circumvent § 11580.01.

However, "[i]t is readily apparent that the legislature chose to inform the insurance purchasing public about the type of insurance they were about to buy rather than ban a certain type of policy." Comment, *supra* at 945. Thus, having considered the advantages and disadvantages of permitting claims made policies, the legislature chose to allow them, provided the insured was adequately informed as to the scope of coverage. *See id.* The *nature* of the "disadvantage" to the insured is no different with National Union's policy than that present in any "claims made" policy.

One major concern about claims made policies is that no coverage will exist for the errors in the last year of the policy unless claims are made during the policy period. *Id.* at 935, 937. The concern is that this restricts the time in which a claim can be brought as compared to the time available in occurrence coverage. *Id.* at 937. Including a reporting provision restricts the time in which the claim can be

brought to a time certain, that is until the end of the policy period. This is a somewhat more restrictive policy than the claims made policy described in § 11580.01. However, there is no reasoned basis for concluding that the legislature, having accepted as a matter of public policy the right of an insurer to limit the time in which claims can be brought, as long as the insured was adequately informed of the scope of the policy, would determine that precisely defining the time period of coverage in this manner would offend public policy. Under either type of claims made policy, an insured would have to purchase a "tail" reporting provision covering all claims made after the policy period in order to secure coverage for all acts committed during his professional career. *Id.* at 930–31. Such "tail" coverage, which would have permitted the insured to obtain protection for all acts committed during his professional career, was available in the National Union policy.

■ The National Union policy fulfills the conditions of § 11580.01, namely, it conspicuously identifies the policy as a claims made policy and states in prominent and unambiguous language the nature of coverage under the agreement. Because the policy language is unambiguous, there is no issue of whether the policy fulfilled the reasonable expectations of the insured. *Wolf Machinery v. Ins. Co. of North America*, 133 Cal.App.3d 324, 328, 183 Cal. Rptr. 695, 697 (1982); *see VTN Consol.*, 92 Cal.App.3d at 893, 155 Cal.Rptr. at 174.

Further, permitting the writing of a policy such as National Union's would offer substantial benefits to the insurer and the insured. "An underwriter who is secure that claims will not arise under the subject policy ... after its termination or expiration can underwrite a risk and compute premiums with greater certainty." Comment, *supra* at 928–31. The insurer can establish lower reserves and lower premiums because of reduced risk resulting from not having to calculate for inflation or other future material risks. *See Zuckerman,*

495 A.2d at 399 (1985). The crucial factor is certainty in the calculation of risk; a claims made and reported policy precisely defines the scope of the insured's risk to both the insurer and the insured. To permit an insured to receive an unbargained for coverage period beyond that clearly defined in the policy would both provide a windfall for the insured, and eliminate some of the benefits arising from the certainty in the scope of coverage. *See id.* at 406.

In addition, the Court in *Zuckerman* confronted and rejected the same objections to the National Union policy as have been raised here, recognizing the substantial benefits that inure to both insureds and insurers from permitting the insurer precisely and unambiguously to define the scope of coverage. *Id.* at 406 ("an extension of the notice period in a 'claims made' policy constitutes an unbargained-for expansion of coverage, *gratis*, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy"). *See also Gulf Insurance Co. v. Dolan, Fertig, & Curtis*, 433 So.2d 512, 515 (Fla.1983); *City of Harrisburg v. International Surplus Lines Insurance Co.*, 596 F.Supp. 954 (M.D.Penn.1984).

Finally, plaintiff's argument that the cases establishing the notice-prejudice standard reflect a public policy against permitting an insurer to define the scope of insurance coverage by a notice provision must fail. The notice requirement in an occurrence or claims made policy does not define the coverage provided by the policy, but rather assists the insurance carrier in investigating, settling, and defending *covered* claims. The prejudice standard in such an instance is intended to protect an insured against a forfeiture of contractual rights, based on technical grounds. *Cf. Campbell*, 60 Cal.2d at 305–07, 32 Cal.Rptr. at 828–29, 384 P.2d at 156–57; *Flack*, 6 Cal.App.3d at 140–43, 85 Cal.Rptr. at 696–98; *Zuckerman*, 495 A.2d at 406. This

rationale is inapposite when the question involves the coverage under an insuring agreement, where as a matter of law an insured is given freedom to define the scope of insurance coverage. *Cf. Fireman's Fund,* 227 Cal.Rptr. at 205.

Accordingly, National Union's policy, unambiguously restricting coverage to those claims made and reported to the insured during the policy period, is valid as a matter of law. Since it is undisputed that none of the insureds whose claims are at issue reported his claim within the policy period, such claims are not covered under the National Union policy as a matter of law. Therefore, it is appropriate to enter summary judgment in favor of defendants on count two of plaintiffs' first amended complaint for a declaration that National Union is required to defend and indemnify the insureds and for recovery of amounts already expended by plaintiffs in their defense. It is also appropriate to enter summary judgment in favor of National Union on its counterclaim for declaratory relief that National Union is not obligated to defend the insureds.

*Unfair Competition*

Plaintiffs also allege that, by refusing coverage on claims made against the insureds, but reported outside the policy period, for which no prejudice had been shown, defendants committed acts of unfair competition as defined by California law, Cal.Bus & Prof.Code § 17200. Since the National Union policy is valid as a matter of law, and by its plain terms did not cover the insureds, the act of denying the insureds' claims axiomatically does not constitute an unfair business practice. Accordingly, summary judgment is appropriately awarded in favor of National Union on count one of plaintiffs' complaint for unfair competition.

ACCORDINGLY, IT IS HEREBY ORDERED that defendant's motion for summary judgment on its counterclaim and on plaintiffs' first amended complaint is granted. Plaintiffs' motion for partial summary judgment is denied. Counsel for defendant will lodge a proposed judgment.